# CAMPBELL'S ADM'R AND HEIRS vs. GULLATT.

[APPLICATION FOR DOWER.]

1. *Marriage valid; what is in this State.*—A marriage good at the common law, is a valid marriage in the State.
2. *What will be presumed to sustain a decree for dower in probate court.*— In an application for dower in the probate court, when the transcript shows that on the trial, or on the day of the trial, a motion was made and granted, to amend the petition, to correct a mistake in the description of the lands ; and also, shows the amendment was made, and then the decree sets out certain lands, as the lands in which dower is prayed to be assigned, it will be presumed to sustain the decree, that the lands set out in the decree, are the lands as they were described in the petition, as amended, and that the amendment, (it not appearing in the transcript,) has, in some way, been separated from the files, and lost or mislaid.

APPEAL from the Probate Court of Jackson.

Tried before the Hon. P. RAGLAND, Register in Chancery, the presiding judge being incompetent on account of interest.

APPLICATION by appellee, Sarah A. Gullatt, wife of Thomas A. Gullatt, to the probate court of Jackson county, to have dower assigned her, in the lands of her deceased husband, James Campbell.

The statements in the petition for dower, appear sufficiently in the opinion. Proper service was made upon all the parties. M. L. Swan, guardian *ad litem* for the minor heirs of Campbell, filed an answer to the petition denying all its allegations. The administrator and the remaining heirs, filed a joint and separate answer, admitting the allegations of the petition, except the marriage of petitioner with Campbell which is denied, as follows: " These respondents say, it is not true that petitioner and said James Campbell, were ever lawfully married ; but as they are advised, believe and state, the pretended marriage between them was *illegal* and *invalid;* and they do not admit, but

Campbell's Adm'r and Heirs v. Gullatt.

deny that petitioner was ever the lawful wife of said James Campbell, and that she is entitled to dower in any lands of said James Campbell."

It being found that the presiding judge was incompetent, on account of interest, under § 560 of the Code, the trial of the cause was ordered transferred to the register of the court of chancery of the 33d district, northern division of Alabama, and all the original papers and entries made in the cause, certified to him.

Afterwards, as the transcript shows, on the day of the trial, the following order allowing amendment of the petition was made : "On motion, in open court, upon plaintiff's application to amend her petition, so as to show the *proper numbers* of the lands of which the intestate died seized in fee, the court allows the amendment, which is accordingly amended, October 26th, 1867," but in what the amendment consisted does not appear from the transcript.

On the trial, as shown by the bill of exceptions, the petitioner introduced the following duly certified copy of the marriage record from the probate court :

"State of Alabama, } *To any of the judges of said State,* Jackson county. } *justice of the peace of said county, or other persons legally authorized :*

These are to authorize you, or either of you, to solemnize the rites of matrimony between James Campbell, and Sarah E. Browning, of said county, agreeably to the statute in such cases made and provided.

Given at the office of the judge of probate of said county, this 9th day of June, 1862.

M. P. BROWN, Judge P. C.

Solemnized on the 9th day of June, 1862.

NOAH SHELTON,
Justice of the Peace."

The petitioner also offered the following testimony to prove the marriage : The deposition of M. P. Brown, which was read by agreement. " I was elected judge of probate on the 1st Monday in May, 1862. Received my commission about the last of said month. Was duly sworn, as such officer, on or about the 3d day of June, 1862. For a

short time subsequent to the last date, the business of the office was conducted by my predecessor, J. M. Hudgins, at my request and in my name. So soon as I could arrange my business and give my personal attention to the office, I did so. In a short time after I began to give my personal attention to the current business of the office, there was handed to me a marriage license, authorizing the solemnization of the rites of matrimony between James Campbell and Sarah E. Browning, of this county. When handed to me, said license had my name signed to it officially; purporting to have been issued on the 9th day of June, 1862, and solemnized by Noah Shelton, justice of the peace. I entered said license and the solemnization thereof, with my own hand, on the marriage record, signing my name to the record thereof. A short time subsequent to said entry on the record, James Campbell, since deceased, came to my office and desired to know of me if said license had been returned to me, and all made right. I told him the license had been handed me, and that I had entered it on the record, and that all was right, whereupon he expressed himself as being satisfied. And in recording said marriage license and the solemnization thereof, I intended to, and did, ratify the ministerial act of the person signing my name thereto. And at the time said marriage license was presented to me, with my name signed thereto, I did ratify and confirm the same, and proceeded forthwith to the entry thereof of record, as above stated." "The petitioner then proved by William T. Hart, that James Campbell and petitioner lived together as man and wife, after the 9th day of June, 1862; that they were recognized and received as man and wife; that they spoke to, and of each other as man and wife; that he sent word to his relatives in the State of Tennessee, that he had married petitioner, and was living with her as his third wife."

Petitioner then introduced L. H. Brewer, who proved that said M. P. Brown, after his election in May, 1862, as probate judge, requested him to attend to any business of his office in his, (Brown's,) absence, and that under this authority, he signed Brown's name to said license.

Petitioner proved by one Higginbotham, that at the request of said James Campbell, he went with him and petitioner to said Shelton's; that he was informed by said James Campbell, that he and said Sarah were going to be married; that said Sarah and James Campbell were there married in his presence by said Shelton, and afterwards lived together as man and wife until the death of said Campbell.

Petitioner proved by James M. Hudson, that he was a practicing physician in 1862 and 1863, living near said Campbell, and was his family physician; that after the 9th day of June, 1862, petitioner and said Campbell lived together, and recognized each other as man and wife, until the death of said Campbell in August, 1863; that he was called by said Campbell to visit, professionally, petitioner as his wife, and did so attend her.

" The defendants then introduced Noah Shelton, by whom they proved that in June, 1862, he was an acting justice of the peace, in and for said county of Jackson; that petitioner and James Campbell then resided in said county; that on the 9th day of June, 1862, said Campbell and petitioner came to his house and requested him to marry them; that he had blank marriage licenses, which had been given him by a former judge of probate of said county, and he had been authorized to issue such licenses by said judge; that he filled up one of these, with the names of said James Campbell and petitioner, but not knowing who was probate judge at the time, did not sign any probate judge's name to the license; that some week or ten days thereafter, he went to Bellefonte, and learning that M. P. Brown had been elected, and was acting as probate judge, and said Brown being absent, procured one L. H. Brewer to sign Brown's name to such license, and left said license with said Brewer for record; that after he married said James Campbell and petitioner they lived together as man and wife, until said Campbell's death in August, 1863; that they had a child born to them during the life of said James Campbell."

"On the 9th day of June, when said Shelton married petitioner and said Campbell, Jackson county was in posses-

sion of the United States military forces, and so continued until the 1st September, 1862, and such marriage was had within the federal military lines."

The bill of exceptions sets out the proof of the number of acres of land of which the said Campbell died seized, and the correct numbers of the same, and copies of the title deeds produced on trial. This was all the evidence.

" On this evidence, the court decreed that petitioner was entitled to dower in the lands described in the petition, and decreed her dower in such lands," the numbers of the land being the same as set out in the deeds. To this ruling and decree the defendants excepted.

The errors assigned, and other facts of this case, are fully set out in the opinion.

WALKER & BRICKELL, for appellants.—1. Was the marriage between the appellee and James Campbell valid? We submit it was not. The forms and requisitions of the statute were not observed ; no license from the probate judge was obtained. The justice who performed the ceremony, had no authority from the probate judge who was in office, when the license should have been issued, to issue licenses. Whatever authority he had was from a former probate judge. The license was never issued—it was filled up after the marriage, and the name of the probate judge affixed to it. This act was ratified by the probate judge. The issuance of a marriage license is a ministerial act.—*Cotton v. Rutledge*, 33 Ala. 110. A ministerial act cannot be the subject of ratification. It must be valid, or invalid, when the act is done. Its validity cannot depend on matter *ex post facto.*—*Perkins v. Hopkins & Reid*, 14 Ala. 536.

2. The marriage alleged, stands without having been sanctioned with a license. The statute is that "no marriage shall be solemnized without a license issued by the judge of probate of the county in which the female resides."—Revised Code, § 2338. The validity of a marriage had without such license is an open question in Alabama.

Campbell's Adm'rs and Heirs v. Gullatt.

*Robertson v. State*, Mss. Op., June term, 1868. In this case, Byrd, J., holds such marriage invalid.

3. If an open question, we submit that there cannot be a doubt of the invalidity of the marriage. The statute regulates marriage—defines who shall be capable of entering into the relation—prescribes the form in which it shall be contracted. A marriage, had without an observance of the statute, cannot be valid.—2 Parsons on Con. 74–83 ; Park on Dower, 8 ; *Dumbarton v. Franklin*, 19 N. H. 257 ; *Brunswick v. Litchfield*, 2 Greenleaf, 32 ; *Lizonia v. Buxton*, 2 Greenleaf, 102 ; *State v. Hodgskin*, 19 Maine, 155 ; *Bashane v. State*, 1 Yerger, 177 ; *Grisham v. State*, 2 Yerger, 589.

4. The statute of December, 1866, legalized such marriages.—Revised Code, § 2350. If such marriages were valid without the statute, the statute has no office to perform—no field of operation. The statute is a legislative construction of the former statutes—a legislative declaration of the invalidity of such marriages.

This marriage, however, was not legalized by the statute, and could not be, so far as this case is involved. This marriage had terminated by the death of James Campbell, long prior to the passage of that statute. On his death, his real estate was cast on his heirs, by operation of law. The right of the appellee, for dower, must then have existed. No subsequent legislation could create that right, or divest the title of the heirs.—*Boykin v. Alabama Trust and Life Insurance Company*, 38 Ala. 510.

5. The court below erred in awarding dower in the following described lands, in which she does not, in her petition, claim dower, viz : The northeast quarter of the northeast quarter of section 30, township 3, range 6, east ; the northwest quarter of section 20, and a fraction of 98 acres, it being a strip across the north end of the east half of the southeast quarter of section 19, township 3, range 6, east ; the northwest quarter of section 19, township 3, range 6, east; the west half of the southwest quarter of section 22, township 3, range six, east. In these lands appellee does not claim dower.—Revised Code, § 1632, *Martin vs. Martin*, 22 Ala. 86.

6. The court below erred in decreeing dower, in which it was not proven that the intestate had seizin, during the marriage. The court decreed dower in northwest quarter of section 19, in which it was not shown that the intestate ever had seizin. Marriage, seizin, death of the husband, must concur to entitle the appellee to dower. The absence of either is fatal to the application. Nor can it be said that this is not an error, prejudicial to the appellants. The intestate may have had in these lands an equitable estate, of which the appellee would not have been dowable, which would descend to his heirs. That estate, by this decree, may be encumbered with a dower right of appellee, from which by law it is exempt.

R. W. WALKER, for appellee.—1. The fact of marriage is sufficiently established by proof that the parties cohabited as husband and wife. The only cases in which any further evidence is necessary, to prove marriage, are trials for bigamy and actions *crim con.* In suits for dower the marriage is provable by reputation and declarations.—*Ford v. Ford,* 4 Ala. 144–5 ; *Martin v. Martin,* 22 Ala. 86, 102 ; 2 Scribner on Dower, 192–3–4 and cases ; *Ibid,* 197 ; Tyler on Infancy and Coverture, 865 ; *Patterson v. Zanes,* 6 How. U. S. 550.

The evidence as to issuance of license, and formal ceremony was, therefore, entirely unnecessary, and may be wholly disregarded. The great weight of authority, as well as of reason, is in favor of the proposition that, marriage by mere consent of the parties, especially if followed by cohabitation, is good—except where local statutes expressly provide that marriages not made in the manner prescribed by them are void.—2 Kent Com. 86–7; 1 Bishop Mar. and Div. §§ 289–282 ; Reeve on Dom. Rel. p. 196; 2 Greenleaf, § 460 ; 1 Scribner, Dower, 62–98 ; *State v. Murphy,* 6 Ala. 265; *Jackson v. Cloer,* 18 Johns. 346 ; *Rose v. Clark,* 8 Paige, 574 ; *Clayton v. Wardell,* 4 Const. 230 ; *Pearson v. Hovey,* 6 Halsted, 12, 18–21 ; *Carmichael v. State,* 12 Ohio St. 553, 559 ; *Dumarsely v. Fishly,* 3 A. K. Marsh, 368 ; *Donnelly v. Donnelly,* 8 B. Mon. 113 ; *Jewell v. Jewell,* 1 How. U. S. 219 ; *Hallett v. Collins,* 10 How. U. S. 174 ;

*Cunningham v. Burdell,* 4 Bradf. Sur. R. 343 ; *Ferry v. Administrator,* 3 Brad. 151 ; S. C. 4 Bradf. 28 ; S. C. 26 Barb. 177.

It is a universal rule that a regulation or statute concerning marriage, does not affect the validity of the marriage, unless it contains an express clause of nullity. In other words, a marriage good at the common law, is good, although not solemnized according to the statute on the subject, unless the statute expressly declares that non-compliance with its provisions shall avoid the marriage. 1 Bishop, M. and D. § 283, and cases in note ; *Ibid,* § 277, note 2 ; *Parton v. Hervey,* 1 Gray R. 119 ; Tyler on Inf. and Cov. § 652 ; *Hartz v. Sealey,* 6 Binney, 405.

2. The seizin of Campbell was shown by the deeds and patents.

Appellant relies on the variance between the description of the lands in the original petition, and the description given in the decree.

The record clearly shows that the original petition was amended, so as to give the proper numbers of the lands of which Campbell was seized, and that when the trial took place the petition, on which the court acted, described the lands as set forth in the decree. The proof shows that Campbell was seized of all the lands described in the decree, and the recitals of the decree clearly show that the petition, when acted on by the court, described the lands just as they are described in the decree. In order to sustain the judgment of the court below, this court will make every presumption not contradicted by the record.—See 20 Ala. 226; 32 Ala. 41, 459, 500 ; 21 Ala. 232 ; 22 Ala. 607 ; 31 Ala. 101, 164; Shep. Dig., p. 572 ; 26 Ala. 686 ; 28 Ala. 214.

There is no variance between the lands, as described in the decree, and those described in the deeds and patents. Even if there were, there would be no reversal, except as to the particular tract not proved, and this court would not remand, but render the proper decree.—Revised Code, § 3502 ; 32 Ala. 149 ; 29 Ala. 570, 719.

E. W. PECK, C. J.—This case originated in the probate

court of the county of Jackson, by a petition, filed by Mrs. Sarah A. Gullatt, the appellee, to have dower assigned to her in the lands of James Campbell, deceased.

The petition states that she was lawfully married to said deceased, in said county of Jackson, in the month of June, in the year 1862, and that they lived together as husband and wife, until the death of said James Campbell, in the month of August, in the year 1863, in the same county; that after the death of said James Campbell, she was lawfully married to her present husband, Thomas J. Gullatt; that the said James Campbell departed this life intestate; that at his death he was a resident citizen of said county of Jackson, and seized and possessed of certain tracts or parcels of land lying and being in said county. The lands are then described by sectional divisions.

The petition states that William H. Robinson, one of the appellants, had been appointed, and had qualified as the administrator of the estate of said deceased, and also states who were his heirs at law, and makes the said administrator and heirs-at-law, as the parties adversely interested, parties to the proceeding.

The other matters, necessary to entitle her to dower in the lands of the deceased, are set out in the petition.

The adverse parties, the present appellants, were regularly brought into court, and filed their answers, in which answers it is denied that petitioner, Sarah A. Gullatt, was ever the lawful wife of said James Campbell; that the pretended marriage, as they are advised, believe and state, between the said James Campbell, and the said Sarah A. Gullatt, was invalid and illegal.

After the answers were filed in the probate court, the case was several times continued, and, at a probate court held in said county, on the 9th day of April, 1867, was transferred to the register of the court of chancery for the 33d district, northern division of this State. Before the register, the case was continued to the 26th of October, 1867, the day on which the case was heard, and a final decree rendered. On this day, a motion and entry were made in the following words and figures: "On motion, in open court, upon plaintiff's application to amend the peti-

tion *so as to show the proper numbers of the land of which the intestate died seized in fee—the court allows the amendment, which is accordingly amended, October* 26*th,* 1867." On this day a trial was had before the register, who made a decree that the said Sarah A. Gullatt, as the widow of said James Campbell, deceased, was entitled to dower in the lands described in the decree. The decree commences as follows: "This being the day to which this cause was regularly continued, and set for hearing the application of Sarah A. Gullatt, wife of Thomas J. Gullatt, *praying for an allowance and assignment to her of dower in the lands above described, as follows*:—( then follows a description of the lands in which the dower of said Sarah A. Gullatt is decreed to be assigned.)

On the trial a bill of exceptions was signed and sealed, at the instance of the appellants, in which the evidence of the marriage of the said James Campbell, and the said Sarah A. Gullatt, is set out, as well as the evidence of the seizin of the lands, by the said James Campbell, in which it was sought to have dower assigned to the said Sarah A. Gullatt. It is not necessary to state this evidence, in this opinion, as it can be seen by reference to the bill of exceptions; it is deemed sufficient to say it states that the parties were married by a justice of the peace of Jackson county, and that from the day of the marriage to the day of the death of the husband, the parties lived together as man and wife, and recognized themselves as such, and were so recognized as such by the community in which they lived, and were received and reputed to be husband and wife.

The register decreed that the appellee was entitled to dower in the lands described in the decree.

The appellants appealed, and assign two errors, to-wit: 1. The court erred in decreeing dower to the appellee in the lands described in the decree. 2. The court erred in decreeing that appellee was entitled to dower in the lands of James Campbell, deceased.

Under these assignments, the appellants have made and argued two points, to-wit: 1. That the marriage between the said James Campbell, and said Sarah A. Gullatt, was

void.  2. That the lands described in the decree are not the lands described in the petition.

1. Marriage is a divine institution, and, although in some respects it may partake of the nature and character of ordinary contracts, it has, with few exceptions, always been considered as standing upon higher and holier grounds than any secular contracts.  By a large portion of the christian world it is believed, and held, to be a sacrament, and is reverenced and treated as such.  Our blessed Saviour says, "a man shall leave father and mother and cleave to his wife, and they twain shall be one flesh."

There is, no doubt, much wisdom in the legislation that seeks to throw around the marriage relation safeguards to prevent its being entered into hastily, or unadvisedly, or without the consent of parents and guardians.

Our own legislation, (see Revised Code, pages 481, 2 and 3,) has, we think, done all that prudence requires for this purpose.  It forbids incestuous marriages ; that is, marriages within certain prohibited degrees.  It declares that a male under the age of seventeen, and a female under the age of fourteen years, are incapable of contracting marriage.

Section 2335 provides that marriages may be solemnized by any licensed minister of the gospel, in regular communion with the christian church or society of which he is a member ; by a judge of the supreme or circuit court within the State ; or by the judge of probate, or any justice of the peace within their respective counties.

Section 2336 says, the pastor of any religious society may also solemnize marriage, according to the rules ordained, or custom established by such society ; and the clerk or keeper of the minutes of such society, must keep a register, and enter thereon a particular account of all marriages solemnized by the society ; which register, or a sworn copy thereof, is presumptive evidence of the fact.

Section 2337 provides, that the people called menonists, or quakers, or any other christian society, having similar rules or regulations, may solemnize marriage according to their forms, by the consent of the parties published and declared before the congregation assembled for public worship.  True, the next section, 2339, says no marriage

shall be solemnized without a license, to be issued by the judge of probate of the county in which the female reside ; which license, it declares, is an authority to any one qualified to solemnize marriage, to join together in matrimony the persons therein named. But, it is worthy of notice, that our legislation on the subject of marriage no where declares that marriages without such license, or solemnized by persons not qualified, are invalid ; nor are any of the punishments or penalties inflicted by our laws, for violating or neglecting any of its provisions, imposed on the parties themselves.

The judge of probate, by section 2342, is declared guilty of a misdemeanor, and subjected to a penalty of $500, for issuing a license to marry contrary to the article in the Revised Code, on the subject of marriage ; and by section 2343, he is guilty of a misdemeanor for failing to perform certain duties specified in said section.

Section 2344 declares any of the persons authorized by section 2335 to solemnize marriages, guilty of a misdemeanor, who joins persons in marriage without a license, as provided in said article ; and section 2345 enacts, that any person solemnizing the rights of matrimony with the knowledge that either party is under the age of consent, or within the prohibited degrees, is guilty of a misdemeanor, and, on conviction, must be fined not less than one thousand dollars.

Thus we see that all the punishments and penalties inflicted by our laws of marriage, are none of them inflicted upon the married parties themselves, but all of them are inflicted upon the persons charged with certain duties by said laws, for omitting, neglecting or performing such duties improperly. Nor do said laws declare marriages, not solemnized in accordance with their provisions, invalid.

We, therefore, do not feel authorized to do what the laws themselves have not done ; but we are prepared to hold, and do hold, that, in this State, a marriage not celebrated in conformity with the said laws on marriages ; that is, celebrated without a license issued by the judge of probate, or not by any one of the persons or religious societies named in said laws, or without complying with the

other provisions of said laws, is not to be declared invalid, provided the requirements of the common law have been substantially complied with, in the celebration of the marriage; in other·words, that a marriage good at the common law, is to be held a valid marriage in this State.

There is no necessity, in this case, to refer to authorities, to show that the evidence, to say the least of it, proves a good marriage at the common law, and, therefore, according to this opinion, a valid marriage in this State.

2. It was admitted in the argument by the counsel for the appellees, that a portion of the lands described in the original petition, (the petition set out in the transcript,) are misdescribed; that some of the numbers were wrong; but it was insisted that the original petition had been amended, and the mistake corrected, and that the lands set out in the decree, correspond with the lands described in the petition, as amended.

The transcript shows that, in open court, on the day of the trial, a motion was made by the appellees to amend the petition, so as to show *the proper numbers of the land of which the intestate died seized,* and the entry says, "the court allows the amendment, which is accordingly amended," dated October 26th, 1867; the same day the trial was had and the decree made. We think it reasonable to presume the misdescription in the original petition was discovered on the trial, or just as the parties were entering upon it, and the motion was then submitted to correct such mistake, and that the misdescription was then corrected, as the entry itself states the amendment was made accordingly. This presumption is strengthened by the phraseology of the decree; it says, "this being the day to which the cause was regularly continued and set for hearing the application of Sarah A. Gullatt, wife of Thomas Gullatt, *praying for an allowance and assignment to her of dower in the lands described as follows:*" (then follows a description of the lands in which dower is decreed to be assigned.) This, we think, clearly shows that the lands described in the decree are the same described in the petition as amended; for it is in the petition only that she makes her prayer to have dower assigned to her.

To sustain the decree we will make this presumption, and as the amendment does not appear in the transcript, we will also presume it has, in some way, been separated from the files, and lost or mislaid; and hold the lands set out in the decree, and the lands described in the petition, as amended, are the same. From these views, it follows that there is no error in the decree of the court below, under either of the assignments, and it is therefore affirmed at the costs of the appellants.