ISAAC HAGGIN v. LOVISA HAGGIN.

[FILED OCTOBER 11, 1892.]

</div>

1. **Marriage**: SOLEMNIZED BY UNAUTHORIZED PERSON: VALIDITY.    Where a marriage is solemnized before any person professing to be a justice of the peace, minister of the gospel, or other person authorized by law to solemnize marriages, and it is consummated with the full belief, on the part of the persons so married, or either of them, that they have been lawfully joined in wedlock, the marriage will be valid, although the person before whom it was solemnized had no authority.

2. ——: LICENSE NOT ESSENTIAL TO VALIDITY. A license to marry is but a preliminary step in the proceedings. It takes the place of proclamation of the bans in a church as practiced, under the British ecclesiastical law, and, while the solemniza- tion of a marriage without a license would render the party performing the ceremony liable, it will not affect the validity of the marriage, if otherwise legal.

3. ——: FOREIGN LAWS: FAILURE TO PLEAD. In the absence of pleading and proof to the contrary, the laws of another state will be presumed to be like our own.

4. Action by Wife Against Husband. On the facts set forth in the petition, *held*, that the wife could not recover from her husband upon the cause of action therein stated, but that she was entitled to have satisfaction of a former judgment for ali- mony set aside and the judgment reinstated. Leave given to remit $1,375 from judgment.

ERROR to the district court for Saline county. Tried below before MORRIS, J.

*Abbott & Abbott*, for plaintiff in error.

*Hastings & McGintie, contra.*

MAXWELL, CH. J.

This action was brought in the court below by the de- fendant in error against the plaintiff in error to recover damages, and on the trial the jury returned a verdict in her favor for the sum of $1,675, upon which judgment was rendered. There is no bill of exceptions, and the only question is the sufficiency of the petition to sustain the judgment. The petition is as follows:

"The plaintiff Lovisa E. Haggin complains of the de- fendant Isaac Haggin and says, that on the 22d day of June, A. D. 1886, she was, as the wife of said defendant, divorced from said defendant by a decree of district court of said Saline county, Nebraska, and that the said plaintiff recovered a judgment of $300, her alimony against said defendant, at the same time and in said court and that

thereafter, to-wit, on or about the 17th day of August, 1886, the said defendant again proposed marriage to said plaintiff and was accepted by said plaintiff, the said defendant telling said plaintiff at the time that it would be necessary to go to the state of Kansas to have the marriage ceremony performed, by reason of having been divorced in the state of Nebraska, and that plaintiff, believing the story of the said defendant, and relying on the same, was induced to, and did go with said defendant to the said state of Kansas on the 20th day of August, A. D. 1886; and that on the 20th day of August, A. D. 1886, at the American House, in the city of Washington, in the county of Washington, in the state of Kansas, the said defendant had a marriage ceremony performed by a reputed clergyman, between said plaintiff and defendant, the said plaintiff believing the representations of said defendant made at said time, that said marriage was in accordance with the laws of the said state of Kansas and was made by a licensed clergyman and one duly empowered by the laws of the said state of Kansas to perform the said marriage rite, or ceremony, and that said marriage was on the part of said defendant made in good faith and for the purpose of living with said plaintiff as her husband, yet the said plaintiff avers that said marriage was not made in accordance with the laws of the state of Kansas, and was not performed by a licensed clergyman, nor by any one else having authority or the right to marry people, all of which said defendant well knew at the time, and that said marriage was a mock or false marriage ceremony, arranged and performed by the said defendant and the said reputed clergyman, who was a stranger to said plaintiff, for the purpose of basely deceiving said plaintiff, and to practice a fraud upon her and to induce said plaintiff, through the belief that she was the wife of said defendant, to receipt the aforesaid judgment for alimony in full, and to induce said plaintiff to go to the said state of Kansas to live, where said defendant agreed to go and live with

the plaintiff as soon as he could arrange his business in Nebraska.

"And the plaintiff further avers, that, believing that she was the wife of said defendant, and that she was honestly and legally married to said defendant, she did, on the day following said supposed marriage, viz., the 21st day of August, A. D. 1886, come back to Saline county, Nebraska, and lived and cohabited with the said defendant as his wife and did, at the solicitation of said defendant, and without value received and without receiving any pay therefor, on or about August 20, 1886, receipt the judgment docket of the district court of Saline county, Nebraska, for the said $300 alimony, and that at the solicitation and request of said defendant, she went, on the 24th day of September, 1886, to the said state of Kansas to live, where she remained without any means whatever except what she obtained by working out for other people, and being entirely destitute she was unable to return to Saline county, Nebraska, until the 14th day of November, 1887.

"Plaintiff further avers that said defendant now refuses to acknowledge said plaintiff as his wife, or to acknowledge the marriage ceremony as aforesaid as legal and binding, and denies that he is in any way bound to her, the said plaintiff.

"And said plaintiff further avers that she has, by reason of the fraud practiced upon her as aforesaid, in said false marriage, and by reason of the premises herein, been damaged in the sum of five thousand dollars.

"Wherefore plaintiff prays judgment against said defendant in the said sum of five thousand dollars, her damages so as aforesaid sustained, and the costs of this suit, and for such other and further relief as the nature of her case and equity may require."

The facts stated in the petition tend to show a valid marriage. In the absence of allegations to the contrary, the laws of Kansas in relation to marriage will be presumed

to be the same as the laws of this state.. (*Moses v. Comstock*, 4 Neb., 519; Story's Conf. of Laws [7th ed.], secs. 637, 637*a*.) Section 1407 of the Consolidated Statutes provides: "No marriage solemnized before any person professing to be a justice of the peace, or a minister of the gospel, shall be deemed or adjudged to be void, nor shall the validity thereof be in any way affected on account of any want of jurisdiction or authority in such supposed justice or minister; *Provided*, The marriage be consummated with a full belief on the part of the persons so married, or either of them, that they have been lawfully joined in marriage." The words "minister of the gospel" evidently were intended to include all clergymen of every denomination and faith. It will thus be seen that although the person who performed the marriage ceremony was not authorized to do so, yet if either party believed he was so authorized, the marriage will be valid. And although a license is required, yet a failure to procure the same, although it may render the person performing the ceremony liable, will not of itself affect the validity of the marriage. (2 Kent's Comm. [13th ed.], 86, note *b*; *Blackburn v. Crawfords*, 3 Wall. [U. S.], 185; *Carmichael v. State*, 12 O. St., 555.)

In the case last cited the plaintiff in error, who had a wife then living, was married a second time. The second marriage had been performed by a person who had no license or authority to perform the marriage ceremony. The court sustained a conviction for bigamy against the husband. It is said: "The act of the general assembly is 'An act regulating marriages;' it does not profess to create or confer a right to marry, but only to regulate the exercise of a right, the existence of which is pre-supposed. The consequences of denying validity and effect to the exercise of the right would be so serious that an intention to do so will not be inferred, but must be clearly expressed."

In *Meister v. Moore*, 96 U. S., 76, it is said: "A statute

Haggin v. Haggin.·

may declare that no marriages shall be valid unless they are solemnized in a prescribed manner; but such an enactment is a very different thing from a law requiring all marriages to be entered into in the presence of a magistrate or a clergyman, or that it be preceded by a license or publication of bans, or be attested by witnesses. Such formal provisions may be construed as merely directory, instead of being treated as destructive of a common law right to form the marriage relation by words of present assent; and such, we think, has been the rule generally adopted in construing statutes regulating marriage. Whatever directions they may give respecting its formation or solemnization, courts have usually held a marriage good at common law to be good notwithstanding the statutes, unless they contain express words of nullity. (*Catterall v. Sweetman*, 1 Rob. Ecc. [Eng.], 304; *Port v. Port*, 70 Ill., 484; *Campbell v. Gullatt*, 43 Ala., 57; 14 Am. & Eng. Encyc. of Law, 514.)

The practice in Great Britain under the ecclesiastical laws or rules appears to be the announcement in a particular church of the intended marriage, the purpose being to give all persons who may oppose the marriage an opportunity to present their objections before the marriage takes place. (Pothier on Marriage, p. 2, C. 2; 1 Bouv., Law Dict. [14th ed.], 189.) The principal object is to prevent ill-advised and clandestine marriages. The statute requiring license is designed to take the place of publication of bans, and the law as to both is directory, and the failure to observe it does not affect the validity of the marriage. The marriage, therefore, was valid and the defendant in error is the wife of the plaintiff in error, and she cannot recover damages for a void marriage. There is but little doubt that such an action may be maintained by the party injured where by means of a pretense of marriage, but without validity, the plaintiff below had sustained wrongs of the kind mentioned in the petition.

Second—It is alleged that by means of said marriage the plaintiff below was induced to release the former judgment against the defendant below for alimony.

The petition, liberally construed, shows that this was effected through the false pretenses of the defendant below. The plaintiff below, so far as appears, is entitled to judgment for that amount with interest. The plaintiff below, therefore, has leave, within thirty days, to remit from the judgment the sum of $1,375, in which case the judgment will be affirmed; otherwise the judgment will be reversed and the cause remanded for further proceedings.

JUDGMENT ACCORDINGLY.

THE other judges concur.