(87 South. 109)

## CARTER et al. v. GAINES et al.
### (2 Div. 708.)

(Supreme Court of Alabama. Nov. 11, 1920.)

1. Slaves ⬤⇒25—Former slaves whose marriage was effectuated by ordinance could not marry others without divorce.

If a negro man and woman were married while slaves, and such marriage became legally effective and binding by the ordinance of September 29, 1865 (Rev. Code 1867, p. 64, No. 39), having application, in the absence of divorce of the parties, they were not thereafter free to contract marriage with others; the issue of the first marriage being legitimatized and held in the same relations and obligations from and to her parents as if born in lawful wedlock.

---

⬤⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**2. Slaves ☜25—Marriage effective under ordinance of 1865 valid and binding.**

A marriage between negroes, consummated or becoming effective under either alternative of the ordinance of September 29, 1865 (Rev. Code 1867, p. 64, No. 39), was as valid and binding, aside from statutory causes for dissolution as that of any other person consummated pursuant to law, and issue of the man of such negroes and another woman cannot claim that she is the heir at law of the man under Code 1907, § 3766.

**3. Slaves ☜25—Cohabitation evidence of marriage within ordinance of 1865 though not constant and exclusive.**

Cohabitation between two negroes could rise to the dignity of marriage, to come within the ordinance of September 29, 1865 (Rev. Code 1867, p. 64, No. 39), though it was not constant and exclusive; "constant and exclusive" cohabitation defining fidelity to the marriage relation, but not being its only evidence.

**4. Trial ☜244(3), 261—Instruction properly refused as misusing name and unduly singling out part of evidence.**

In ejectment by the grandchildren of a negro against a daughter, defendant's requested instruction was properly refused that in ascertaining whether defendant's father and a woman other than her mother were living together with intention to be husband and wife on September 29, 1865, the jury might look to and consider the later marriage of defendant's father to her mother, etc., on account of misusing the name "Hannah," instead of "Margaret," in naming defendant's mother, also as unduly singling out a part of the evidence and seeking to give undue emphasis thereto.

**5. Trial ☜244(3)—Requested charges properly refused as unduly singling out part of evidence.**

In ejectment by the grandchildren of a negro man against his daughter, requested charges were properly refused defendant that the law presumed the marriage between defendant's father and her mother was legal, etc., as unduly singling out a part of the evidence and seeking to give undue emphasis thereto.

**6. Appeal and error ☜1078(1)—Assignments not argued need not be discussed.**

It is unnecessary to discuss assignments of error not insisted on in argument of counsel.

**7. Trial ☜82—Grounds of objection to question must be stated.**

Objection to question to witness is not sufficient if no grounds for the objection are assigned.

**8. Appeal and error ☜260(1)—Exception to answer as well as objection to question necessary.**

Error in admission of evidence is not reviewable, where though objection is made to question to witness, no exception is taken to answer.

Appeal from Circuit Court, Marengo County; A. B. Foster, Judge.

Ejectment by Alice Gaines and others against Emma Carter and others. From judgment for plaintiffs, defendants appeal. Affirmed.

The following charges were refused to the defendant:

(2) In order for cohabitation to arise to the dignity of evidence of marriage, it must be constant and exclusive cohabitation between the man and the woman, entered into with a view of becoming husband and wife.

(7) In ascertaining whether Sol Littlejohn and Hannah were living together with the intention to be husband and wife on September 29, 1865, the jury may look to and consider the later marriage of Sol Littlejohn to Margaret Ann and his living with her as his wife for 30 years or more, if the jury are reasonably satisfied from the evidence that he was married to Hannah in 1873, by W. M. Booker, a justice of the peace, and did live with her as wife, until the time of her death about the year 1911, and may further consider, if the jury are reasonably satisfied from the evidence that it is true, that Hannah married Shepherd Collins about the year 1873 and thereafter continued to live with Shepherd as his wife until the time of his death. A. The law presumes that the marriage between Sol Littlejohn and Margaret Ann was legal.

(C) In determining whether Sol Littlejohn and Hannah were man and wife, they have the right to consider how Sol and Hannah treated the matter themselves, and the fact that Hannah subsequently married Collins is a circumstance tending to show that she did not regard Solomon as her husband.

William Cunninghame, of Linden, and George Pegram, of Faunsdale, for appellants.

The court erred in refusing charge 2. 18 R. C. L. 430; 41 Colo. 40, 92 Pac. 26, 124 Am. St. Rep. 96; 105 Tex. 597, 153 S. W. 1124, L. R. A. 1915E, 38, Ann. Cas. 1915C, 1011. The court erred in refusing charge 4. 183 Ala. 645, 62 South. 833; 196 Ala. 465, 71 South. 465; 20 Ala. 548, 56 Am. Dec. 206; 119 Ala. 627, 24 South. 374; 21 Mont. 170, 53 Pac. 312, 69 Am. St. Rep. 649; 18 R. C. L. 416. On these authorities, the court also erred in refusing charges 7, A, and C. The court erred in rendering judgment for the recovery of the entire estate and all the rents. 90 Ala. 164, 8 South. 715, 24 Am. St. Rep. 778; 128 Ala. 182, 30 South. 792; 133 Ala. 379, 32 South. 579; section 3766, Code 1907. The court erred in admitting Josiah Williams' evidence. 119 Ala. 625, 24 South. 567.

I. I. Canterbury, of Linden, and Reese & Reese, of Selma, for appellees.

The marriage relation, once established, continues until death or divorce. 26 Cyc. 872; 68 Ala. 567. The second marriage was void. 22 Ala. 102; 28 Ala. 565; 63 Wis. 58, 23 N. W. 110, 53 Am. Rep. 259; 28 Colo. 362, 65 Pac. 59, 89 Am. St. Rep. 206, and note.

☜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

There was no error in the charges given or refused. Ordinance No. 39; 69 Ala. 381; 183 Ala. 645, 62 South. 833; 143 Ala. 327, 39 South. 223, 5 Ann. Cas. 143; 129 Ala. 223, 29 South. 696; 119 Ala. 627, 24 South. 874; 14 Ala. App. 428, 70 South. 287; 117 Ala. 103, 23 South. 806, 41 L. R. A. 760, 67 Am. St. Rep. 166, and authorities supra.

THOMAS, J. This suit was statutory ejectment, filed January 1, 1918. Defendant disclaimed as to a part of the land and pleaded "not guilty" as to the other.

The common source of title was a former slave, Solomon Littlejohn. The claim of appellant was through her mother, Margaret Ann, a slave, as the wife of said Solomon; and that of appellees, as the grandchildren of said Littlejohn, through their grandmother Hannah (Collins), who was a slave. The latter claimed that a lawful marriage existed between Littlejohn and Hannah under both classes of the ordinance of September 29, 1865, viz.:

(1) "All marriages between freedmen and freedwomen, whether in a state of slavery or since their emancipation, heretofore solemnized by any one acting or officiating as a minister, or any one claiming to exercise the right to solemnize the rites of matrimony, whether bond or free, are hereby ratified and made valid, provided the parties are now living together as man and wife; (2) and in all cases of freedmen and freedwomen who are now living together recognizing each other as man and wife, be it ordained that the same are hereby declared to be man and wife, and bound by the legal obligations of such relationship. * * * The issue of such marriages or cohabitation are hereby legitimatized. * * *" Revised Code of Alabama (1867) No. 39, p. 64.

A subsequent ordinance, No. 23, approved November 30, 1867 (Acts 1868, pp. 175, 176), providing that—

"Whereas, during the existence of slavery, the usage of the country permitted many thousands of its people to live together without the binding obligations of lawful marriage, * * * that all such freedmen and women who shall now be living together as man and wife, shall be regarded in law as man and wife, and that the children of such connection, whether they be black or of mixed color, shall be and are hereby declared to be entitled to all the rights, benefits and immunities of children of any other class under the laws of Alabama."

—was extended to July 13, 1869, by the Act of December 31, 1868 (Acts 1868, p. 527). Williams v. Witherspoon, 171 Ala. 559, 561, 55 South. 132.

Under either postulate of the above-quoted ordinance, the weight of the evidence tended to establish that said Littlejohn and Hannah, as slaves, were married by a minister of an Episcopal Church; that the mother of appellees was the daughter of such marriage; that the other children of such marriage died without issue prior to the father's death in 1913 or 1914; that Hannah survived said Littlejohn; that said Littlejohn and Hannah were living together, recognizing each other as man and wife, prior to their emancipation; and that said relation continued to, and some time subsequent to, September 29, 1865.

The first of these ordinances made the living together as man and wife at the time of its adoption, where marriage was solemnized by any one acting or officiating as a minister or any one claiming to exercise the right to solemnize the rites of matrimony, and in all cases of freedmen and freedwomen who were living together, recognizing each other as man and wife at the date of its adoption (September 29, 1865), a determining factor as affecting the inheritance of children of such marriage or cohabitation. The provision is:

"The issue of such marriages or cohabitation is hereby legitimatized, and shall be held to the same relations and obligations from and to their parents, as if born in lawful wedlock." Ordinance 39, September 29, 1865.

Under the ordinance of November 30, 1867, freedmen and freedwomen who shall be living together as man and wife shall be regarded as man and wife and "the children of such connection, whether they be black or of mixed color, shall be and are hereby declared to be entitled to all the rights, benefits and immunities of children of any other class under the laws of Alabama." Ordinance No. 23.

These ordinances have been the subject of construction by this court. In Washington v. Washington, 69 Ala. 281, 284, Chief Justice Brickell said:

"In this state, the constitutional convention of 1865 (R. C. of 1867, p. 53), on the 22d of September, adopted an ordinance in recognition of the fact that the events and results of the war had destroyed slavery; and declaring that thereafter, in this State, there should not be 'slavery nor involuntary servitude, otherwise than as a punishment for crime.' * * * From the adoption of that ordinance slavery ceased to have a legal existence in this state. A definition of the legal status of the population emancipated from slavery, living together as husband and wife, was a necessity. On the 29th of September, 1865, the convention adopted an ordinance (R. C. 1867, p. 64), providing," etc.

Its validity has not, so far as I know, been questioned. This decision had no effect upon a mere illicit intercourse, not intended or recognized at the time by the parties as marriage. It is not the "cohabiting like man and wife the ordinance legalizes, but the cohabiting as man and wife, and in mutual recognition of the relation." Bell v. Bell, 196 Ala. 465, 71 South. 465; Bell v. Bell, 183 Ala. 645, 651, 62 South. 833. The ordinance was up-

held, though not made a part of the Constitution or ratified by the people. Washington v. Washington, supra; Ex parte Birmingham & Atlantic Ry. Co., 145 Ala. 514, 532–534, 42 South. 118.

In Johnson v. Shepherd, 143 Ala. 325, 327, 39 South. 223, 224 (5 Ann. Cas. 143), the court observed of the facts of that case:

"The undisputed evidence was that Jeff and Mose Johnson had the same father, but different mothers; that Mose was born before the war, and his parents were slaves, and his mother died before the war. The father then, during slavery, took up with the mother of Jeff Johnson and continued to live with her for years after the war, and until her death, about fifteen years ago. * * * The parents of Jeff Johnson, being slaves and having started a cohabitation before their freedom, such a cohabitation could not have legitimatized their offspring, upon the theory of a common-law marriage, but, as they continued to live together as man and wife up to and after September 29, 1865, the legal relation of man and wife attached with all of its duties, obligations and rights; and, as a matter of course, Jeff Johnson was their legitimate child and capable of inheriting, both from the father and mother."

These ordinances, where applicable, were rules of inheritance from slave paternity, and appear to have remained unchanged by subsequent legislation. By the adoption of the Code of 1907 (effective April 1, 1908), through section 3766, the additional provision was made that—

"Slaves and free persons of color prior to the abolition of slavery in this state, and their descendants, are capable of inheriting or transmitting property, real, personal, or mixed, the same in all respects as white persons, where the ancestors lived together as man and wife under such circumstances as would constitute a valid marriage at common law. This section shall also apply to and govern all cases heretofore arising and to which it may be applicable." Williams v. Witherspoon, supra.

An observation of the latter statute is contained in Foster et al. v. Lee et al., 172 Ala. 32, 40, 55 South. 125, Ann. Cas. 1913C, 1335.

[1] If it be a fact that Solomon Littlejohn and Hannah (Collins) were married while slaves, and that marriage became legally effective and binding by the ordinance having application, in the absence of divorce of the parties they were not thereafter free to contract marriage with other parties, as was sought to be shown by the introduction in evidence of the certification of the marriage of Littlejohn to Margaret Ann Tabb on March 10, 1872, and of the certification of the marriage of Shepherd Collins to Hannah Dixon on January 22, 1871. That is to say, such subsequent attempt at remarriage by the respective parties had not the effect to invalidate the former slave marriage of Solomon and Hannah, solemnized by their master, an Episcopal minister, and which was followed by cohabitation and recognition of each other as husband and wife, and continued to be so recognized by them up to and at the time of the adoption of the ordinance (September 29, 1865) in such wise as that they became husband and wife under the ordinance. The "issue" of such marriage and cohabitation was appellees' mother, who was "legitimatized" and "held to the same relations and obligations from and to their [her] parents as if born in lawful wedlock."

[2] The ninth assignment takes the point that error underlay the rendering of judgment against Emma Carter, for the plaintiffs, for the recovery of the entire estate in the lands and all rents; the appellant insisting that she is the heir at law of Littlejohn (under the provisions of Code, § 3766), irrespective of the fact that, at the time of the attempted marriage of Littlejohn to appellant's mother, Littlejohn had a living lawful wife (Hannah) by force of the ordinance of September 29, 1865, and that no divorce had dissolved his matrimonial relation to her. There is no merit in this insistence. A marriage consummated or becoming effective under either alternative of the ordinance of 1865 was as valid and binding (aside from statutory causes for dissolution) as that of any other person consummated pursuant to law. The purpose of section 3766 of the Code was to ameliorate the hardship pointed out in Johnson v. Shepherd, 143 Ala. 325, 327, 39 South. 223, 5 Ann. Cas. 143. There, the mother of Mose died prior to emancipation; and her child, by a slave marriage, was not subject to the terms of the ordinance and could not inherit from his slave father. The facts of that case were that, subsequent to the death of Mose's mother, the mother of Jeff assumed the relation of wife to Mose's father, and continued that relation until it was legalized by the adoption of the ordinance. Thereafter the father of Mose and Jeff died, leaving property that descended to Jeff; the half-brother Mose taking no interest therein. To prevent this hardship resulting under statutes of descent and distribution to issue of such slave marriages, the recent statute provided that slaves and free persons of color, and their descendants, are capable of inheriting and transmitting property the same in all respects as white persons, "where the ancestors lived together as man and wife under such circumstances as would constitute a valid marriage at common law." Code, § 3766. See Campbell's Adm'r v. Gullatt, 43 Ala. 57, 66; Beggs v. State, 55 Ala. 108; Farley v. Farley, 94 Ala. 501, 10 South. 646, 33 Am. St. Rep. 141; White v. Hill, 176 Ala. 480, 489, 58 South. 444; Herd v. Herd, 194 Ala. 613, 69 South. 885, L. R. A. 1916B, 1243; L. R. A. 1915E, 27 note; L. R. A. 1915E, 11 note; Lloyd's Law of Divorce, 3 et seq.; 2

Nelson on Div. and Sep. § 777; 1 Bishop on Mar., Div. & Sep. § 7 et seq. The foregoing statute is without application to the facts of the instant case, for, having a living wife, said Solomon could not have lived with the ancestor of Emma Carter under such circumstances as would constitute a valid marriage at common law, and have given to the issue of such cohabitation the right of inheritance from the unlawful father.

The expressions "cohabited as man and wife," and "living together as man and wife," in charges 4, 5, and B, were misleading. Aside from this, defendant had the benefit of explanatory charges, given at her request, numbered 1, 3, 5, 6, and E. The oral charge of the court correctly stated the law of "slave marriages" and "living together as husband and wife," as affected by the ordinance.

[3] Charge 2, refused to defendant, denied that cohabitation could rise to the dignity of marriage unless it was "constant and exclusive" notwithstanding the fact that parties intended thereby to cohabit as man and wife and recognized each other as such. "Constant and exclusive" cohabitation may define a fidelity of the marriage relation, but is not its only evidence.

[4, 5] Charge 7 was properly refused for not correctly hypothesizing the fact of marriage of Solomon to Margaret by Judge Booker, a justice of the peace—using the name of Hannah instead of Margaret. Aside from this, it unduly singled out a part of the evidence and sought to give undue emphasis thereto. Miller v. Whittington, 202 Ala. 406, 80 South. 499, 504. The same error justified the refusal of charges A and C. Moreover, the oral charge of the court gave defendant the benefit of the instruction sought in charge C.

[6] It is unnecessary to discuss assignments of error not insisted upon in argument of counsel. Georgia Cotton Co. v. Lee, 196 Ala. 599, 72 South. 158; Southern States Fire Ins. Co. v. Kronenberg, 199 Ala. 164, 74 South. 63, 68.

[7, 8] No reversible error is presented by the assignment based on the allowing of Josiah Williams to testify on his direct examination that he had heard Hannah speak of Solomon Littlejohn, in the presence of others, as her husband. The defendant objected to the question and assigned no grounds for the objection and reserved no exception to the answer. Atla. & St. A. B. Ry. Co. v. Fowler, 192 Ala. 373, 379, 68 South. 283; 1 Wigmore, Ev. pp. 64, 65, § 20.

The judgment of the court below is affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and SOMERVILLE, JJ., concur.