LYDIA ELIZABETH BAKER, APPELLANT, V. GROVER C. BAKER, APPELLEE.

FILED DECEMBER 4, 1924.    No. 22948.

Marriage: ANNULMENT. Where a male and female are above the age required by statute to enter into the marriage relation, and are otherwise competent, and are married under and pursuant

Baker v. Baker.

to a marriage license that is wrongfully obtained, and the marriage is fully consummated, the fact that the marriage license was wrongfully obtained affords no ground for annulment of the marriage.

APPEAL from the district court for Clay County: WILLIAM A. DILWORTH, JUDGE. *Affirmed.*

*Sloan, Sloan & Keenan* and *Epperson, Massie & Epperson,* for appellant.

*Stiner & Boslaugh, contra.*

Heard before MORRISSEY, C. J., LETTON, ROSE, GOOD and THOMPSON, JJ.

GOOD, J.

This action was instituted on behalf of Lydia Elizabeth Rath Baker by her father, John Rath, Jr., as her next friend, to annul her marriage to defendant Grover C. Baker. As grounds for the relief demanded, plaintiff alleged that she was under the age of 18 years when the marriage ceremony was performed; that defendant used artifice and deceit and exercised undue influence over plaintiff and coerced her consent to entering into the marriage; that he practiced fraud in procuring the marriage license, by falsely representing to the county judge that plaintiff was 19 years of age when he knew that she was under 18 years, and that the marriage had not been consummated by cohabitation of the parties. Defendant admitted the marriage, and that plaintiff was under 18 years of age when the license was procured and the marriage ceremony performed, and that he had falsely stated to the county judge that she was over 18 years of age when he procured the marriage license, and denied the other allegations of the petition. A trial of the issues thus presented resulted in a general finding for the defendant and the dismissal of plaintiff's cause of action. Plaintiff appeals.

From the record it appears that at the time of the marriage ceremony plaintiff lacked three weeks of being 18

years of age; that she had for many years resided with her
parents on a farm in Clay county; that defendant resided
on a farm about two miles distant, where his sister kept
house for him; that defendant had "kept company" with
the plaintiff for a year and a half, or more, prior to their
marriage; that he frequently called upon her at the home
of her parents, took her to church and to places of enter-
tainment and amusement; that the father and mother of
plaintiff frequently visited the defendant at his home; that
the two families were quite intimate; that a marriage be-
tween the parties had been contemplated for a long time,
and on two or three different occasions defendant had
sought the consent of plaintiff's father to the marriage, but
on each occasion the father had withheld consent on the
ground that his daughter was too young at that time to
enter into the marriage relation.

On November 5, 1921, defendant procured the marriage
license and that evening met plaintiff in the town of Sut-
ton, and, with his sister took her in his automobile and
drove to the village of Saronville, where the marriage
ceremony was performed by a minister of the gospel in
the presence of the latter's wife and of defendant's sister.
Plaintiff insists that, while she knew he had the license
and saw it before they left Sutton, she told him she would
not marry him without the consent of her parents. How-
ever, she did not protest against going to Saronville, nor
did she make any protest or remonstrance when the mar-
riage ceremony was performed. After the marriage cere-
mony, plaintiff, defendant and his sister drove back to
Sutton, where the sister was left, and defendant and plain-
tiff drove on to the city of Aurora, where he and his wife
registered at a hotel as man and wife and occupied the
same room. The next morning the parties drove to Lin-
coln, where they remained two days with relatives of the
defendant, and then drove back to Clay county and re-
mained one night with a neighbor. The next morning they
drove to the home of plaintiff's parents, evidently to seek
their forgiveness, but plaintiff's mother ordered defendant

not to come upon the premises. After an hour's parley the parties then returned to the defendant's home. Later in the day word was sent to plaintiff that her mother was ill and desired her to come home. Defendant again took his wife to the home of her parents, stating that he would call for her that evening. When he did call for her that evening she came out and sat in the automobile with him and discussed their affairs for some time, but refused to go with him, and remained with her parents. Very shortly thereafter this action was instituted.

The evidence discloses that the marriage was fully consummated; that no artifice, deceit or coercion was used by defendant; that, while plaintiff desired the consent of her parents to the marriage, nevertheless it appears that she freely and without any duress or any undue influence entered into the marriage relation. We have, then, this situation: Was the marriage void or voidable so that it may be annulled because the plaintiff was under 18 years of age, and because the marriage license was obtained by falsely representing that she was above the age of 18 years?

Section 1489, Comp. St. 1922, declares: " In law, marriage is considered a civil contract, to which the consent of the parties capable of contracting is essential." Section 1490, Comp. St. 1922, provides: " At the time of the marriage the male must be of the age of eighteen years or upwards and the female of the age of sixteen years or upwards." It will thus be observed that the parties to this action were of the age where they could consent to and enter into a marriage contract. It is true that the statute further provides: " Previous to the solemnization of any marriage in this state, a license for that purpose must be obtained from the county judge of the county wherein the marriage is to take place." Comp. St. 1922, sec. 1492. And the next succeeding section (section 1493) provides: " When either party is a minor, no license shall be granted without the verbal consent, if present, or written consent, if absent, of the father, if living, if not, then of the mother, of such minor, or of the guardian or person under whose

care and government such minor may be, which written consent shall be proved by the testimony of at least one competent witness." However, this relates to the obtaining of a license, and does not go to the validity of the marriage.

It has long been the rule in this state, and, we think, in most jurisdictions as well, that, notwithstanding the statute declares a license shall be necessary, yet the want of a license does not affect the validity of the marriage. This court has held in *Haggin v. Haggin,* 35 Neb. 375, that the want of a license does not affect the validity of the marriage, but renders the party performing the ceremony liable. In *Melcher v. Melcher,* 102 Neb. 790, it is held: " If a minor is of the age of consent (Rev. St. 1913, sec. 1541), the fact that there was no license, or that it was wrongfully obtained, does not invalidate his marriage." And in the course of the opinion it is said (p. 792) : " We must remember that the age of consent to marry is, by our statute, made 18 years or upwards for the male, and 16 years or upwards for the female (Rev. St. 1913, sec. 1541) and, although by section 1543, Rev. St. 1913, a license must be obtained before the marriage takes place, and by section 1544, Rev. St. 1913, no license can be issued to a minor without the consent of his parents, yet the want of a license does not affect the validity of the marriage. *Haggin v. Haggin,* 35 Neb. 375. These parties were both above the age of consent, and therefore, under these provisions of the statute, they were legally married. The fact that the license was wrongfully procured may destroy its effect and protection, and subject the parties at fault to penalties, but it does not affect the validity of the marriage itself." In that case the husband and wife were aged 19 and 17 years, respectively.

Section 1491, Comp. St. 1922, declares what marriages shall be void, but it is clear that the parties to this action do not fall within any of the provisions mentioned in said section, and no statutory ground appears for declaring this marriage invalid. Plaintiff insists that this court, how-

ever, has general equitable jurisdiction to declare invalid a marriage contract procured by fraud, regardless of the fact that it does not come within any of the provisions of the statute which render a marriage void or voidable. This contention cannot avail the plaintiff because the record is barren of any evidence that would establish fraud in procuring the plaintiff's consent to enter the marriage relation.

The judgment of the district court is supported by well-established principles of law and is sustained by the evidence.

                                                    AFFIRMED.

ROSE, J., dissents.

---

The following opinion on motion for rehearing was filed May 1, 1925. *Former judgment of affirmance adhered to.*

PER CURIAM.

This case has been heretofore submitted and an opinion adopted. *Baker v. Baker,* ante, p. 738.

The case has again been argued on a motion for rehearing. After a careful reexamination of the questions involved, a majority of the court is satisfied with the opinion heretofore adopted, and it is therefore adhered to.

ROSE, J., dissents.