34 So.2d 185
**ELLISON v. STATE.**
8 Div. 631.

Court of Appeals of Alabama.
Feb. 24, 1948.

H. T. Foster, of Scottsboro, for appellant.

A. A. Carmichael, Atty. Gen., and L. E. Barton, Asst. Atty. Gen., for the State.

HARWOOD, Judge.

This appellant was indicted and convicted of the offense of assault with intent to murder in violation of Section 38, Title 14, Code of Alabama 1940. The court imposed a sentence of confinement in the State penitentiary for a term of one year and one day. Such action on the part of the court will be commented on later.

The evidence introduced by the state tended to show that about midnight on December 1, 1945 the appellant went near to the home of Laura and Peter Bates and there called for Frank Evans, also known as "Snake Eyes," who resided with the Bates couple, being their nephew.

All occupants in the Bates house were in bed. Laura Bates arose and went to the door, having cautioned her nephew not to leave the house. In a conversation with appellant she learned he wanted to "settle" something with "Snake Eyes." Laura asked the appellant to leave, told him it was too late to settle matters that night, and told appellant if there was to be any fighting she was going to be in on it. Appellant then asked her to come on out. Laura replied she would have to put on her shoes, to which appellant replied she wouldn't need any shoes. Laura opened the front door, but had not unlatched the screen door when a shot was fired, hitting her most severely in the forehead. The defendant then ran and in a very short time another shot was fired.

Testifying in his own behalf in the trial below the appellant admitted being near

the Bates home at the time a shot was fired, but claimed he went there to get some whiskey from "Snake Eyes." He further claimed that he was accompanied by "two or three boys" who waited for him on a railroad track near the Bates home, and that the shot was fired from the railroad track by some person unknown to him.

Appellant admitted he had borrowed a shotgun from one Prentice Robinson, but claimed he had obtained the gun some two or three weeks prior to the night of the shooting for the purpose of hunting.

Appellant further admitted that at the time of his arrest on the night of the shooting he had told the arresting officers that he had fired the shot at the Bates house, but claimed that this statement was untrue and made because he was afraid the officers would mistreat him.

In rebuttal the state called as a witness the Chief of Police of Scottsboro. This officer testified that he arrested the appellant at his home immediately after the shooting, after having been forced to break in the door of appellant's house to gain entrance. Appellant was in a half drunken condition. A shotgun, recently fired was found in appellant's house. This witness further testified that at the time of his arrest appellant admitted having fired the shot that struck Laura Bates, but claimed he was shooting at Peter Bates who had first fired at him.

The state also introduced in rebuttal the Sheriff of Jackson County who, after qualifying as an expert in patterns of fired shotgun shells testified that in his opinion the shot fired at the Bates house was fired from close range, and could not have been fired from the distance of the railroad track. He further testified that an empty shotgun shell was found near the house next to, and close by, the Bates house.

After completion of this rebuttal evidence of the state the defense called Jesse James Boyd as a witness. Boyd testified that he and four other men were out on the railroad track at the time of the shooting.

The record then shows the following:

"Mr. Tally: We object.

"The Court: What do you want to prove?

"Mr. Foster: I am attempting to prove by him that he saw this defendant and he did not even have a gun. That is certainly in rebuttal.

"The Court: I don't believe it is in rebuttal to what they offer. You are limited now to what they offered on their rebutter. This is surrebutter, and you are limited to questions about the shot, etc.

"Mr. Foster: We except to not being permitted to show this darky here didn't have a shotgun and that he saw him at the house.

"Q. Did this boy here do the shooting?

"Mr. Tally: State objects.

"The Court: Sustained; that is still in the nature of defense.

"Q. How close were you to the house? A. We were right out on the railroad right at the house.

"Q. How far away from the house? A. As far as from here to that little place out there, the band stand out there or hardly that far.

"Q. Did somebody there have a shotgun in that crowd?

"Mr. Tally: We object.

"The Court: Sustained.

"Mr. Foster: We except. That is all."

 In our opinion the court's action in the premises was correct. The defense had rested without introducing this witness. The scope of his testimony was therefore confined to the scope of the state's rebuttal evidence, that is evidence indicating the distance from which the shot was fired. The trial court properly confines rebuttal, and of course surrebuttal evidence, to material within the scope of the preceding adverse evidence. A trial court is clothed with wide discretion in the matter of permitting surrebuttal evidence. Borland v. Mayo, 8 Ala. 104; Birmingham Railway Light and Power Co. v. Saxon, 179 Ala. 136, 59 So. 584. It was even the rule at one time that the court's decision in such premises was not revisable. Towns v. Riddle, 2 Ala. 694. No error can be charged to the trial court in its ruling above.

Numerous questions were objected to during the trial below, thereby invoking a ruling by the court. Such rulings were so patently correct in all instances, except one that we deem no discussion indicated. The one instance in which the court erred in its ruling on such objections was during the examination of the witness Vernon Thomas, who, over the objection of defendant was permitted to answer the following questions:

"Q. I ask you if it would be possible for a shot to be fired from the railroad and hit the house where this hit with those shot?

"Mr. Foster: We object.

"The Court: Overruled.

"Mr. Foster: We except.

"A. I don't think so for the shots to go like they did go in the house.

No grounds being assigned the objection was insufficient to justify a reversal based on the ruling of the court. Circuit Court Rule 33, Code 1940, Tit. 7 Appendix; Carter et al. v. Gaines et al., 204 Ala. 640, 87 So. 109.

Only one written charge requested by the appellant in the trial below was refused. No error can be attached to this action of the trial court since the refused charge was adequately covered in the oral charge given by the court to the jury. Russo v. State, 236 Ala. 155, 181 So. 502.

In its judgment the court sentenced this accused to be imprisoned in the State penitentiary for a term of one year and one day. The penalty to be imposed for conviction on a charge of assault with intent to murder is imprisonment in the penitentiary for not less than two years nor more than twenty years. Section 38, Title 14, Code of Alabama 1940.

In our opinion this record is free from error justifying a reversal of the verdict and judgment of guilty of the offense charged. It is to that extent affirmed, but remanded to the lower court for proper sentence.

Affirmed; remanded for proper sentence.