# SUPREME COURT — APPELLATE DIVISION — FOURTH DEPARTMENT.

November 24, 1920.

## THE PEOPLE v. FRANK D. DUNBAR.

(194 App. Div. 144.)

(1) BIGAMY*—SECOND MARRIAGE CONTRACTED AFTER ABSENCE OF SPOUSE FIVE YEARS.

The defendant was properly convicted of bigamy, he having married a third wife while the second was living, where his second marriage was contracted after the absence of his first wife for more than five years and where he thereafter procured a divorce from his first wife as soon as he knew that she was living and then continued to live with his second wife for some time thereafter.

(2) SAME—THIRD MARRIAGE AS BIGAMOUS WHEN BASED ON SECOND MARRIAGE.

Where a person enters into a second marriage while having a husband or wife by a prior marriage still living who has absented himself or herself for five successive years without being known to the party contracting the second marriage to be living during that time, the second marriage is not void but voidable and cannot be attacked collaterally and a charge of bigamy may be based thereon where such person marries a third time while the second wife is living.

APPEAL by the defendant, Frank D. Dunbar, from a judgment of the County Court of Cayuga county, rendered on the 10th day of June, 1920, convicting him of the crime of bigamy.

*Richard T. Anderson,* for the appellant.

*Benn Kenyon, District Attorney,* for the respondent.

HUBBS, J.:

The defendant was convicted of the crime of bigamy under an indictment which charged that on the 27th day of January,

---

* See note, 27 N. Y. Crim. 16.

1920, he married one Geraldine Raleigh in the city of Syracuse, N. Y., while he then had a wife living by the name of Effie May Seeley whom he had married on the 23d day of August, 1906, at the city of Syracuse, N. Y.

Upon the trial the defendant admitted that he was married by the ceremonial marriages as charged in the indictment. He contended, however, at the trial and now urges that by the marriage to Geraldine Raleigh on the 27th day of January, 1920, he did not commit the crime of bigamy for the reason that the alleged marriage to Effie May Seeley on August 23, 1906, was null and void because at the time of that marriage he had a wife living whose name was Leonora Healy, to whom he had been duly and legally married on November 26, 1897.

The defendant testified that in 1899, two years after he entered into the first marriage with the Healy woman, she left him and that he did not know until the winter of 1909 that she was living. That was four years after his second marriage, the marriage to Effie May Seeley. He then procured a decree of divorce from the Healy woman, the one whom he married in 1897, and he continued to live for some time thereafter with Effie May Seeley, the second woman whom he married, treating her as his lawful wife.

Therefore, we have squarely presented the question whether or not the marriage which took place between the defendant and Effie May Seeley in 1906 made Effie May Seeley his wife within the meaning of section 340 of the Penal Law, so that his subsequent marriage on January 27, 1920, to Geraldine Raleigh made him guilty of the crime of bigamy.

Section 340 of the Penal Law reads as follows: " A person who, having a husband or wife living, marries another person, is guilty of bigamy and is punishable by imprisonment in a penitentiary or state prison for not more than five years."

The defendant contends that his second marriage was void because, at the time it was contracted, his first wife was living,

and, hence, that no charge of bigamy for a third marriage may be founded upon the second. Many cases are cited by the appellant stating the general rule substantially as set forth by Mr. Justice McLennan in the case of People v. Corbett (49 App. Div. 514) where he wrote: "Cases might be cited, decided by the highest court in almost every State of the Union, which hold that where marriage is solemnized between parties who are prohibited from entering into the relation by statute, such marriage is absolutely void, and that if such void marriage is followed by another and subsequent marriage, the void marriage cannot be made the basis of a conviction for bigamy."

That the foregoing is a correct statement of the general rule cannot be questioned and it is undoubtedly true that at common law said second marriage would have been absolutely null and void. At common law the remarriage of one having a husband or wife actually living, though unheard of for years and believed to be dead, was void *ab initio*. (Price v. Price, 124 N. Y. 589, 596.)

At the time the defendant entered into the marriage ceremony with Effie May Seeley it was provided by section 3 of chapter 48 of the General Laws, being chapter 272 of the Laws of 1896, known as the Domestic Relations Law, as follows:

"Void marriages.—A marriage is absolutely void if contracted by a person whose husband or wife by a former marriage is living, unless either: * * *

"3. Such former husband or wife has absented himself or herself for five successive years then last past without being known to such person to be living during that time."

It is further provided, by section 4 of the same act, as follows:

"Voidable marriages.—A marriage is void from the time its nullity is declared by a court of competent jurisdiction if either party thereto: * * *

"5. Has a husband or wife by a former marriage living, and

such former husband or wife has absented himself or herself for five successive years then last past without being known to such party to be living during that time."

It is urged by the People, under those provisions of the statute, that the marriage between the defendant and Effie May Seeley was not void and that the defendant, when he married Geraldine Raleigh, had a wife living, to wit, the said Effie May Seeley.

While the exact question here presented does not seem to have been passed upon by the courts, it has been held in many cases that where a person enters into a second marriage while having a husband or wife by a prior marriage still living who has absented himself or herself for five successive years without being known to the party contracting the second marriage to be living during that time, such second marriage is not void and it has been held valid for many purposes although it has developed after such second marriage that the first husband or wife was still living. In the case of Stokes v. Stokes (198 N. Y. 301, 305), Judge Vann wrote: "If she did not then know it within the true meaning of the statute and she married the second time in the full belief, after due observance of the five years' provision, that her first husband was dead, the marriage was not void but voidable, binding upon both parties thereto until action by the court, and their relation was that of honorable marriage, with no stain on the good name of either and no blight on the status of any child they might have."

In Matter of Kutter (79 Misc. Rep. 74), Surrogate Fowler said: "Such a second marriage subsists until death or an adjudication avoiding it, and this is so even if it transpires that the disappearing spouse of the prior marriage reappear."

The validity of such second marriage cannot be attacked collaterally. (Frank v. Carter, 219 N. Y. 35, 38.)

In the case of Price v. Price (124 N. Y. 589, 599), the court said: "The changes effected by the Revised Statutes in the rights of parties entering in good faith into a marriage while

one has a living and undivorced spouse who has been absent for five years and not known to be living, are: (1) The marriage is not void from the beginning, but voidable. (2) When judicially annulled, it is only void from the date of the judgment. (3) When so annulled, the issue may be adjudged entitled to succeed to the estate of the parent who was competent to marry, in the same manner as legitimate children. (4) It has been held that while such a marriage remains unannulled, the cohabitation of the parties is not adulterous (Valleau v. Valleau, 6 Paige, 207); also that the survivor is entitled to administration (White v. Lowe, 1 Red. 376); and before the passage of the acts for the protection of married women, that the husband could hold and transfer the personal property of the wife. (Cropsey v. McKinney, 30 Barb. 47.)"

Certainly, under the decisions heretofore referred to, the marriage between the defendant and Effie May Seeley was valid for the purposes referred to in those cases. If it was valid for those purposes, we are unable to see why, within the meaning of section 340 of the Penal Law, the defendant did not have a wife living, to wit, said Effie May Seeley, at the time when he married Geraldine Raleigh. The law in regard to voidable marriages is stated in 7 Corpus Juris, under the title of Bigamy, at page 1159, section 8, as follows: " A voidable marriage will support an indictment for bigamy, inasmuch as it is binding, in general, on the parties thereto until it is set aside under a direct proceeding instituted for that purpose. A prior marriage, voidable for the want of legal age of either, or of both of the contracting parties, will sustain a conviction for bigamy, unless such marriage has been judicially annulled because contracted under the statutory age of consent, unless there was a separation with the consent of the minor before attaining majority, or unless the marriage was not confirmed by cohabitation after arriving at the age of consent." Many cases are cited, from different jurisdictions, which sustain this statement.

The learned county judge, in submitting the case to the jury, correctly stated the law upon the question of void and voidable marriages and left it to the jury to determine on the evidence whether the marriage between the defendant and Effie May Seeley was void or voidable. We can find no error in that respect and the finding of the jury was abundantly sustained by the evidence in the case. In fact, there is practically no dispute upon that question.

The counsel for the defendant has argued other questions which he insists constitute reversible error. In view of the conclusion which this court has reached upon the principal defense offered by the defendant, those questions cease to be matters of importance. As the main defense was that the second marriage was void, and as this court has reached the conclusion that the jury was justified in finding it to be valid upon the defendant's own evidence, at least for the purpose of establishing the defendant's guilt under the facts in this case, it is unnecessary to discuss those alleged errors.

All concur.

Judgment of conviction affirmed.