ELVIRA COLLINS, APPELLEE, V. HOAG & ROLLINS, INC., APPELLANT.

FILED MARCH 18, 1932. No. 27906.

*Dressler & Neely*, for appellant.

*Cranny & Moore* and *O'Sullivan & Southard, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

GOOD, J.

This is a rehearing of the case reported in 121 Neb. 716. Reference is made to that opinion for a statement of the facts.

This case arises under the workmen's compensation law. The vital point herein is the validity of the alleged marriage between the claimant for compensation and the deceased workman. The facts proved were sufficient to constitute a common-law marriage, which the trial court held to be a valid marriage. The alleged marriage occurred in this state in 1929, and its validity depends upon the proper interpretation of section 42-104, Comp. St. 1929, and the constitutionality of that section.

Prior to the enactment of chapter 40, Laws 1923, this court had held on numerous occasions that neither a marriage license nor a solemnization ceremony was necessary to constitute a valid marriage. It had repeatedly held that if a man and woman, each competent to marry the other, agreed to become married, lived and cohabited together as husband and wife, and so held themselves out to the public, such acts constituted a valid marriage. Prior to 1923 there was no statute in this state declaring that to constitute a valid marriage it was necessary for the parties to obtain a marriage license and have their marriage solemnized by a person authorized by law to solemnize marriages. In that year the legislature enacted chapter 40, Laws 1923, which, as amended by chapter 84, Laws 1925, now appears as section 42-104, Comp. St. 1929. In so far as applicable to the present case that section reads: "Previous to the solemnization of any marriage in this state; a license for that purpose must be obtained from the county judge of the county wherein the marriage is to take place, and no marriage hereafter contracted shall be recognized as valid unless such license

has been previously obtained, and unless such marriage is solemnized by a person authorized by law to solemnize marriages."

Counsel for plaintiff contend that, in law, marriage is purely a civil contract, and only the consent of competent parties is essential to creating the marriage relation. Section 42-101, Comp. St. 1929, reads: "In law, marriage is considered a civil contract, to which the consent of the parties capable of contracting is essential." That section does not declare that consent of competent parties is all that is required to constitute a valid marriage. Consent of the contracting parties is only one of the essential elements. This statute forbids the creation of a valid marriage without the consent of the parties. It is universally recognized that the marriage relation is a status, and that the state is interested in and is, in effect, a party to it. *University of Michigan v. McGuckin,* 64 Neb. 300. If it were merely a civil contract, the parties, themselves, might dissolve it by mutual agreement. This the law forbids. The creation of the status entails certain duties and obligations upon the parties. thereto; the law imposes upon the husband the duty to support the wife, and, if there be children of the marriage, the obligation of the parents is to support their offspring.

It is also argued by counsel for plaintiff that where the courts and the legislature of a state have recognized common-law marriages as valid no new statute should be held to invalidate such marriages, unless upon clear language in the statute nullifying such marriages. This rule is no doubt sound. The legislature had a purpose in enacting into law section 42-104, Comp. St. 1929. The insertion in that section of the language, "and no marriage hereafter contracted shall be recognized as valid unless such license has been previously obtained, and unless such marriage is solemnized by a person authorized by law to solemnize marriages," was intended to effect a change in the statutory law theretofore in existence, and to meet some need for additional legislation. It is a matter of

common knowledge that for many years the estates of deceased persons have been despoiled by persons claiming to be a common-law spouse of decedent, or an heir-at-law of decedent, born of a common-law marriage. In many cases such claims were in the nature of blackmail. It was no doubt this evil which the legislature sought to correct. The language used seems to us so clear as to leave no room for construction or interpretation. "No marriage hereafter contracted shall be recognized as valid unless" certain things are done is equivalent to saying that marriages not performed in the manner prescribed are void.

It has been suggested that the provisions of the statute above quoted were intended to apply only in cases where a license had been first obtained, and not to apply to common-law marriages where no license had been obtained. The language of the statute will not admit of any such interpretation. What reason could exist for making invalid a marriage where a license had been previously obtained but the marriage not solemnized, and yet leaving valid a marriage that was contracted without license or solemnization? No reason for the distinction is apparent. In our view, the statute was clearly intended to prohibit and make invalid any marriage in this state unless a license was first obtained and the marriage solemnized by a person authorized to solemnize marriages.

Counsel for plaintiff argue that if section 42-104, Comp. St. 1929, was intended to prohibit common-law marriages, then it is unconstitutional and void. They contend that chapter 40, Laws 1923, is broader than its title, and seeks to amend several sections of the statute which are not referred to in the act and which are not thereby repealed, and that this is in contravention of section 14, art. III of the Constitution. The title of said chapter 40 reads: "An act to amend sections 1490 and 1492, Compiled Statutes of Nebraska for 1922, relating to marriage, and to repeal said original sections." Section 1490 provided that at the time of the marriage the male must be of the age of 18 years or upwards, and the female of the age of 16

years or upwards. Section 1492 provided: "Previous to the solemnization of any marriage in this state, a license for that purpose must be obtained from the county judge of the county wherein the marriage is to take place." Chapter 40, Laws 1923, combines these two sections into one, fixes the age limit of parties intending to be married, provides for obtaining consent of the parents or guardian where the parties to the proposed marriage are minors, and further provides for the giving of ten days' notice before the marriage license shall be issued. The two sections, 1490 and 1492, dealt with the regulations necessary to entering into the marriage contract. The same subject-matter is contained in chapter 40, Laws 1923.

It is a rule of law that any amendment may be made to an existing section of the statute if the amendatory matter is germane to the matter contained in the original section. *State v. Majors,* 85 Neb. 375; *State v. Ure,* 91 Neb. 31; *Knothe v. State,* 115 Neb. 119; *In re Estate of Austin,* 116 Neb. 137. We think that the amendatory matter incorporated in chapter 40, Laws 1923, is germane to the sections amended, and that the act does not violate the constitutional provision that "No bill shall contain more than one subject, and the same shall be clearly expressed in the title." Const. art. III, sec. 14.

It is also contended by plaintiff that section 42-104, Comp. St. 1929, is violative of that part of section 14, art. III of the Constitution, which reads: "And no law shall be amended unless the new act contain the section or sections as amended and the section or sections so amended shall be repealed," in that the act in chapter 40, Laws 1923, is, in effect, amendatory of three other sections of the statute, now appearing as sections 42-103, 42-114, and 42-115, Comp. St. 1929, without referring to or attempting, in terms, to amend or repeal either of said sections.

Section 42-103, as then and now existing, provides that four certain classes of marriage are void. It will be ob-

served that this statute does not provide that only the classes of marriage therein listed shall be void; nor does section 42-104 change or alter any provision of that section. It remains in full force and unmodified. In fact, the classes of marriage referred to in section 42-103 are void, even though a license has been obtained and the marriage solemnized in the manner provided by law. The legal effect of section 42-103 was to declare that certain persons therein described were incompetent to enter into the marriage relation. Had the legislature so desired, it might have enacted four sections, one for each class of the void marriages, instead of putting four classes into one section. Had it done so, no one would seriously question the power of the legislature to create another, or fifth, class by a separate statute without amending the other sections. However, section 42-104 does not deal with classes of persons incompetent, but with persons competent, to enter into the marriage relation. It is purely a regulatory statute, intended to regulate the manner in which the marriage relation may be created. We think that section 42-104, Comp. St. 1929, is in no sense amendatory of section 42-103.

Section 42-108, Comp. St. 1929, authorizes certain named classes of persons and officials to perform the marriage ceremony, but does not provide that such persons only shall have authority to solemnize marriages or perform marriage ceremonies. Section 42-114, Comp. St. 1929, provides: "No marriage solemnized before any person professing to be a justice of the peace, or a minister of the gospel, shall ,be deemed or adjudged to be void * * * Provided,. the marriage be consummated with a full belief on the part of the persons so married, or either of them, that they have been lawfully joined in marriage." This section, in effect, authorizes any one to perform a valid marriage ceremony if he purports or holds himself out to be a justice of the peace or minister of the gospel, provided the marriage be consummated with a full belief on the part of either of the parties married that

they have been lawfully joined in marriage. *Haggin v. Haggin*, 35 Neb. 375. In other words, section 42-114, under the conditions prescribed, authorizes persons, other than those mentioned in section 42-108, to solemnize marriages or perform the marriage ceremony. Section 42-115 makes it lawful for any religious society to join together in marriage such persons as are in the society, according to the rites and customs of such society to which they belong, and further provides for a return to be made on the license by the clerk, moderator or person presiding in such society. This section likewise authorizes persons, other than those designated in section 42-108, under the conditions therein prescribed, to perform the marriage ceremony. Section 42-104 does not purport to limit the persons who may solemnize marriages to those designated in section 42-108. We have no doubt that a marriage solemnized pursuant to the provisions of section 42-114 or section 42-115 would be a compliance with the provisions of section 42-104. In our opinion, the latter section is not amendatory of either section 42-103, section 42-114, or section 42-115, Comp. St. 1929.

We therefore conclude that no valid marriage ever existed between Elvira Collins, the claimant, and the deceased workman. Her only right to compensation was on the theory that she was the widow of the deceased workman. It follows that she was not entitled to compensation.

The former opinion of this court and the judgment entered pursuant thereto are hereby vacated. The judgment of the district court is reversed, and plaintiff's action dismissed.

REVERSED AND DISMISSED.

PAINE, J., dissents.