JOHN M. CHRISTENSEN, APPELLANT, V. ELSIE F. CHRISTENSEN, APPELLEE.

14 N. W. 2d 613

FILED MAY 19, 1944. No. 31749.

*John A. McKenzie,* for appellant.

*Henry F. Pedersen, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

CHAPPELL, J.

Plaintiff filed a petition in the district court for Douglas county, Nebraska, on February 25, 1943, alleging that the parties were married on September 24, 1941, and that subsequently defendant was guilty of specific acts of extreme cruelty, all of which were designed to wrongfully acquire the property belonging to plaintiff. Plaintiff also alleged that at the time of the marriage his physical condition,

known to all the parties, was such that the marriage was void and should be so declared by the court. However, the prayer of the petition was for an absolute divorce from defendant.

Defendant answered admitting the marriage but denying generally the charges made against her; asserting her continued love, affection and respect for plaintiff; declaring her desire to continue the marriage relation; alleging that their marital difficulties resulted because of plaintiff's condition of health, of which she became apprised just prior to their marriage; and praying that the petition of plaintiff be dismissed and the relief sought be denied.

During the trial plaintiff was given leave to file a supplemental reply alleging that at the time of the marriage, and before license was issued, he, the plaintiff, was afflicted with tertiary syphilis, and that the marriage by reason thereof was void, concluding with a prayer that the marriage be so declared.

The trial court by its decree found specifically that the marriage was legal and valid; that plaintiff had failed by his evidence to sustain the allegations of the petition and reply; and dismissed the action, from which plaintiff appeals.

An examination of the record discloses that plaintiff failed in his evidence to establish any grounds for an absolute divorce. The only evidence that defendant was guilty of any offense in the marriage relation was plaintiff's own testimony to the effect that defendant had called him unprintable names, which is contradicted by defendant. It is elementary in this state that it is not error to deny a divorce from the bonds of matrimony on the charge of extreme cruelty on the part of the defendant where the evidence of the plaintiff as to alleged misconduct is not corroborated. See *Haines v. Haines*, 79 Neb. 684, 113 N. W. 125; Comp. St. 1929, sec. 42-335.

Nevertheless, plaintiff contends that there is sufficient evidence to sustain the allegations of his petition and permissive supplemental reply, which prays for an annulment

of the marriage on the basis that the marriage was void. The reasons given for this contention are that section 42-102, Comp. St. 1929, provides that, "No person who is afflicted with a venereal disease shall marry in the state"; and, that it appears from the undisputed evidence that plaintiff made an affidavit with respect thereto, as required by section 42-104, Comp. St. 1929, which was false, and of which defendant had full knowledge.

The regularity of plaintiff's pleadings for the purpose of judicial annulment is not presented for decision by the parties. Therefore, assuming their regularity, but not deciding the question, we find that plaintiff's pleadings and evidence supporting them failed to either state or prove any right to such relief in a court of equity since under our statutes and authorities generally the marriage was at most voidable at the hands of an innocent party, of which class plaintiff is not a member.

In this connection, the record discloses that the parties, a widow and widower, were middle-aged, respectable people, with kindred intellectual and spiritual interests. They discovered just prior to their marriage, for which all plans had been perfected, that plaintiff was afflicted with tertiary syphilis, but that defendant was negative of any venereal taint. A reputable physician to whom they both went for a physical examination discovered the disease, which the evidence does not disclose was other than innocently acquired. Thereafter both plaintiff and defendant were called to the doctor's office where, in his presence, and in the presence of each other, they were fully informed of all the facts. They were told by the physician, however, that this condition need in no manner interfere with their marriage plans since the particular disease with which plaintiff was afflicted was not in a stage which then or thereafter would become communicable to a marital partner. The latter condition was verified by medical evidence. However, plaintiff was informed at the time that he should at some date not far in the future receive medical treatments to abate the progress and cure the disease. After full knowledge and consulta-

tion the plaintiff and defendant decided to proceed with their marriage. They thereupon went to Papillion, Nebraska, where, with other members of the family present, they obtained a marriage license and the marriage was solemnized as required by section 42-104, Comp. St. 1929, each of the parties making affidavit previous to obtaining the license that they were free from any venereal disease. Of course, plaintiff's affidavit was false, and defendant's affidavit was true, although she knew then of plaintiff's physical condition. They celebrated with a dinner, and went to plaintiff's home where the marriage relation was consummated. After a few days of happiness plaintiff went to a hospital for treatments in conformity with the physician's advice. After his return from the hospital domestic difficulties of small consequence arose, which later grew to larger proportions and resulted eventually in the filing of plaintiff's petition.

A marriage affected in its inception with recognized legal imperfections is classified by the law as void or voidable depending in each case upon the statutes and other legally recognized impediments to perfection. Speaking in general terms and disregarding minor distinctions which courts are often required to do in promulgating definitions, we find that a marriage is termed void when it is not valid for any legal purpose. It is void *ab initio* by statute and its invalidity may be maintained in any proceeding in any court between any proper parties whether in the lifetime or after the death of the supposed husband and wife, and whether the question arises directly by petition for an annulment or collaterally in other proceedings. On the other hand, a marriage is voidable when it has legal imperfections in its constitution which can be inquired into only during the lives of both of the parties in a proceeding by annulment to obtain a judgment of a competent court declaring its invalidity. Otherwise, a voidable marriage is legally valid for all civil purposes until its nullity is so pronounced. See 1 Bishop, Marriage, Divorce and Separation, 107, secs. 258, 259; 35 Am. Jur. 212, sec. 46, and 219-221, secs. 56-58; 38 C. J. 1279; 18 R. C. L. 439-441.

The law of marriage in this country traces its origin back to the ancient decrees of the church and the civil law which were the basis of the matrimonial laws of England, and the nature of these distinctions peculiar to marriage can be truly seen only in the light of its history. See 1 Bishop, Marriage, Divorce and Separation, 108-122, secs. 262-292; 35 Am. Jur. 181, sec. 2; 18 R, C. L. 389. Therefrom the rule has been evolved that every marriage statute is to be interpreted in harmony with the common law theretofore existing and as superseding it only to the extent required by its express terms or necessary operation. In view of the importance of marriage as a social institution it is favored by public policy and the law raises a strong presumption in favor of its legality, the strength of which increases with lapse of time. See *Allen v. Allen,* 121 Neb. 635, 237 N. W. 662. It is generally held that a marriage is not void unless the statutes expressly so declare, and that courts should not so construe it unless the legislative intent to such effect is clear and unequivocal. See 35 Am. Jur. 181, sec. 3, 212, sec. 46, and 234, sec. 85; 38 C. J. 1280; 18 R. C. L. 397. While the purpose and intent of the provision relied upon in section 42-102, Comp. St. 1929, was undoubtedly to protect the innocent, prevent the spread of infectious social disease, and safeguard posterity, we find no provision in the statutes of this state applicable here which expressly declares that a marriage by such a person is void. The same section also provides that the parties must have arrived at certain ages, or upwards, but this court has held that a marriage in violation thereof is not void but only voidable. See *Willits v. Willits,* 76 Neb. 228, 107 N. W. 379.

An examination of all marriage statutes of this state discloses that there are only two sections expressly declaring what classes of marriages are void. They are section 42-103, Comp. St. 1929, which specifically provides that four certain classes of marriages are void; and section 42-104, Comp. St. 1929, which makes common-law marriages void. *See Collins v. Hoag & Rollins,* 122 Neb. 805, 241 N. W. 766. None of these classes include the type of marriage involved in the case at bar.

The latter section has particularly to do with the manner and method of the valid creation of the marriage relation, but, in the absence of express statutory invalidation, this court has held that the fact that the license required was wrongfully or fraudulently procured may subject the parties to the pains and penalties of the law for violation thereof, but it does not alone affect the validity of the marriage itself. See *Baker v. Baker*, 112 Neb. 738, 200 N. W. 1003; *Melcher v. Melcher*, 102 Neb. 790, 169 N. W. 720; 35 Am. Jur. 195, sec. 23.

Finally, there is a well-known maxim of equity which provides that "he who comes into equity must come with clean hands." Its application by equity courts generally bars redress to those guilty of improper conduct in the matter as to which they seek relief. As a defense the doctrine need not be pleaded since it may be invoked and supplied by the court *sua sponte* to protect the integrity of the court, and it has generally been held applicable in proceedings for annulment of marriages. See 30 C. J. S. 475, sec. 93, 487, sec. 97, and 494-497, sec. 99. Although there is authority to the contrary, the majority rule is that for reasons of public policy the doctrine does not ordinarily apply in proceedings to annul a marriage void *ab initio*, particularly where the impediment is an element distinct from the fraud and not dependable in any measure upon it, but the maxim is always applicable in proceedings to annul a voidable marriage. See 1 Bishop, Marriage, Divorce and Separation, 312, sec. 722; 38 C. J. 1350. In this connection, it has been authoritatively stated that, "Beside denying and disproving the facts relied on to show the invalidity of the marriage, defendant in nullity cases may defend on the ground that plaintiff does not come into court with clean hands, having been guilty of fraud or misconduct, or, as it is otherwise expressed, that he is not an innocent and injured party, having had full knowledge at the time of the marriage of the defects or impediments alleged." 38 C. J. 1350. Also, "We may presume that the party guilty of the wrong would not be permitted to take advantage of it, by main-

taining a suit of nullity solely on that ground" and, "When the parties are equally in the wrong neither is entitled to redress." 1 Bishop, Marriage, Divorce and Separation, 234, sec. 546, 234, sec. 547. It is particularly true and applicable here that, "A court of equity will refuse its aid to a litigant who has been guilty of a violation of a statute, if the act of violation is directly connected with the matter in litigation." 4 A. L. R. 104.

We decide that the marriage in the case at bar is voidable only, and that the maxim that "he who comes into equity must come with clean hands" has application which bars annulment. Therefore, the judgment of the trial court is correct, and it is hereby affirmed.

AFFIRMED.