Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/29/2020 09:08 AM CDT

State of Nebraska, appellee, v.
Domingo Gomez III, appellant.
___ N.W.2d ___

Filed March 6, 2020.    No. S-19-369.

1.  **Convictions: Evidence: Appeal and Error.** When reviewing a criminal
    conviction for sufficiency of the evidence to sustain the conviction, the
    relevant question for an appellate court is whether, after viewing the
    evidence in the light most favorable to the prosecution, any rational trier
    of fact could have found the essential elements of the crime beyond a
    reasonable doubt.
2.  **Criminal Law: Statutes: Legislature.** In Nebraska, all crimes are statu-
    tory and no act is criminal unless the Legislature has in express terms
    declared it to be so.

Appeal from the District Court for Scotts Bluff County, Leo
P. Dobrovolny, Judge, on appeal thereto from the County
Court for Scotts Bluff County, James M. Worden, Judge.
Judgment of District Court affirmed.

Darin J. Knepper, Deputy Scotts Bluff County Public
Defender, for appellant.

Douglas J. Peterson, Attorney General, and Matthew Lewis
for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke,
and Papik, JJ.

Papik, J.
Domingo Gomez III challenges his conviction for violat-
ing a domestic abuse protection order. He contends that his

conviction must be reversed because the service return the State introduced at trial did not specifically state that Gomez was served with the protection order he allegedly violated. We affirm his conviction. While the State was required to show that Gomez was personally served with the protection order, we find there was sufficient evidence of personal service.

## BACKGROUND

*County Court Bench Trial.*

The State charged Gomez in county court with violating a domestic abuse protection order, which generally prohibited him from communicating with Michaela Arellano, the mother of his child. Evidence introduced at the subsequent bench trial showed that the district court for Scotts Bluff County entered an ex parte domestic abuse protection order against Gomez on November 28, 2017. The ex parte protection order, among other things, prohibited Gomez from "telephoning, contacting, or otherwise communicating with" Arellano, except to arrange visitation with the parties' minor child. Gomez was personally served with the ex parte protection order a few days after it was entered.

After Gomez did not appear at a subsequent hearing and show cause why the ex parte protection order should be rescinded, the district court entered an order affirming the ex parte protection order on December 28, 2017. The order stated that it would remain in effect for a period of 1 year from the date the ex parte protection order was entered.

Much of the evidence at trial concerned whether Gomez was personally served with the order affirming the ex parte protection order. Over Gomez' objections, the county court received exhibit 3, which included a cover sheet and a service return, both bearing the document identification number "71215" and both listing Arellano and Gomez as the parties in the civil case that resulted in the entry of the protection order at issue. The cover sheet instructed the Scotts Bluff

County sheriff to "serve the following certified copies: Order Affirming Domestic Abuse Protection Order with Ex Parte Order attached." The service return, signed by Matt Dodge, certified that on January 4, 2018, Gomez was served with "Doc. No. 71215 a Cover Sheet with attachments" by personal service. The service return indicated that service was completed at "the hospital."

The county court also received exhibit 4 over Gomez' objections. Exhibit 4 contained a certified copy of the cover sheet described above, the order affirming the ex parte protection order, and the ex parte protection order.

The State also called Dodge to testify. Dodge, a deputy sheriff with the Scotts Bluff County sheriff's office, testified that he had previously served Gomez with legal papers. He recalled that after unsuccessful attempts to contact Gomez at his home, he met Gomez at a local hospital and "gave him the papers." Dodge testified that he signed the service return in exhibit 3. He also testified that he did not serve Gomez with just the cover sheet, but that he served Gomez with the attachments to the cover sheet reflected in exhibit 4—the order affirming the ex parte protection order and the ex parte protection order.

Arellano also testified at trial regarding calls Gomez made to her in February 2018. She testified that these calls were not for the purpose of arranging visitation with their child.

At the conclusion of evidence in the bench trial, counsel for Gomez argued that Gomez could not be convicted, because the service return did not specifically state that Gomez had been served with the order affirming the ex parte protection order.

The county court found Gomez guilty and sentenced him accordingly. It explained on the record that in its view, the State demonstrated beyond a reasonable doubt that Gomez was served with the order affirming the ex parte protection order and that he subsequently contacted Arellano for purposes unrelated to child visitation in violation of that order.

*Appeal to District Court.*

Gomez appealed his conviction to the district court. He contended that there was insufficient evidence that he was personally served with the protection order.

The district court affirmed his conviction. It observed that Gomez had not identified any law requiring that the return of service specifically identify each document that was served and concluded that there was sufficient evidence that Gomez was personally served with the protection order.

## ASSIGNMENT OF ERROR

Gomez assigns one error on appeal. He contends, rephrased, that the district court erred by finding there was sufficient evidence that he was personally served with the order affirming the ex parte protection order.

## STANDARD OF REVIEW

[1] When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Stubbendieck*, 302 Neb. 702, 924 N.W.2d 711 (2019).

## ANALYSIS

Gomez argues that his conviction must be overturned because the State introduced insufficient evidence that he was served with the order affirming the ex parte protection order. Gomez' argument rests on two propositions: (1) that personal service of the protection order is an essential element of the crime of which he was convicted and (2) that the record contains insufficient evidence of such personal service. As we will explain, we generally agree with Gomez on the former proposition but disagree on the latter.

*Elements of Offense.*

Gomez was charged with and convicted of violating Neb. Rev. Stat. § 42-924(4) (Cum. Supp. 2018). That subsection provides as follows:

> Any person who knowingly violates a protection order issued pursuant to this section or section 42-931 after service or notice as described in subsection (2) of section 42-926 shall be guilty of a Class I misdemeanor, except that any person convicted of violating such order who has a prior conviction for violating a protection order shall be guilty of a Class IV felony.

[2] In Nebraska, all crimes are statutory, and no act is criminal unless the Legislature has in express terms declared it to be so. *State v. Mann*, 302 Neb. 804, 925 N.W.2d 324 (2019). Accordingly, to determine the elements of a crime, we look to the text of the operative statute. *Id.* Section 42-924(4) makes the knowing violation of certain protection orders a crime. By its terms, the statute requires proof of the following: (1) service or notice as described in Neb. Rev. Stat. § 42-926(2) (Reissue 2016) and (2) a subsequent knowing violation of a qualifying protection order. Because the crime can be established with proof of either service *or* the notice described in § 42-926(2), it is not technically accurate to describe service alone as an essential element of the crime. We do read the statute, however, to make either service or the notice described in § 42-926(2) an essential element.

This reading of § 42-924(4) is consistent with our decision in *State v. Graff*, 282 Neb. 746, 810 N.W.2d 140 (2011). In *Graff*, we interpreted substantively similar language in a statute governing harassment protection orders to allow for a criminal conviction upon a showing that a defendant knowingly violated a protection order after service. See Neb. Rev. Stat. § 28-311.09(4) (Reissue 2008).

We also concluded in *Graff* that *personal* service was required because the statute governing service of harassment protection orders required it. See § 28-311.09(9)(a). Similar

language requires personal service of domestic abuse protection orders. See § 42-926(1). Following our reasoning in *Graff*, we conclude that in cases alleging a violation of § 42-924(4), in which the defendant does not receive the notice described in § 42-926(2), the State must demonstrate that the defendant was personally served with the protection order.

*Sufficiency of Evidence
of Personal Service.*

While we agree with Gomez that the State was required to demonstrate that he was personally served with the order affirming the ex parte protection order, we cannot agree that there was insufficient evidence of such service.

According to Gomez, the only way the State could demonstrate the requisite personal service was through a service return. He also contends that in the service return, the officer must specifically certify that he or she served the protection order. He asserts that the service return offered into evidence by the State is deficient in this respect because it refers generally to a cover sheet with attachments rather than to a protection order.

In support of his argument that the State must prove service in this particular way, Gomez relies on language in § 42-926(1) providing that once a domestic abuse protection order is issued, the clerk of the court is to give it to the sheriff's office and that upon receipt, the sheriff's office "shall forthwith serve the protection order upon the respondent and file its return thereon with the clerk of the court which issued the protection order within fourteen days of the issuance of the protection order." Because the service return here does not refer specifically to service of a protection order, Gomez claims that the sheriff's office did not "file its return thereon," as provided in § 42-926.

Gomez' reliance on the provisions in § 42-926 regarding the return of service is misplaced. As discussed above, § 42-924(4) allows a defendant to be convicted if he or she

knowingly violates a domestic abuse protection order after *service* of the protection order. Gomez is essentially asking us to make punctilious compliance with the service return provisions of § 42-926(1) an essential element of the crime defined in § 42-924(4). But because § 42-924(4) says nothing about the return of service, such an interpretation would run counter to our practice of strictly construing penal statutes and not supplying missing words or sentences to make clear that which is indefinite, or to supply that which is not there. See *State v. Duncan*, 294 Neb. 162, 882 N.W.2d 650 (2016).

We note that it is far from anomalous to permit a party to prove service of civil process even if the process server fails to comply with statutory direction regarding the service return. Both a Nebraska civil procedure statute and the Federal Rules of Civil Procedure provide that the failure to make proof of service or delay in doing so does not affect the validity of the service. See, Neb. Rev. Stat. § 25-507.01 (Reissue 2016); Fed. R. Civ. P. 4(l)(3). Such provisions "prevent[] a defendant who has been properly served from attacking the validity of service on the technical ground of the process server's failure to make return in timely fashion, or because the return is deficient in some way." 4B Charles Alan Wright et al., Federal Practice and Procedure § 1130 at 210-11 (4th ed. 2015)**.** The fact that § 42-924(4) allows a defendant to be convicted of violating a domestic abuse protection order upon a showing of service, as opposed to proper return of service, serves the same function here.

This leaves only the question of whether there was sufficient evidence that Gomez was served with the order affirming the ex parte protection order. On this question, we do not hesitate to find that there was. The face of the cover sheet indicates that the sheriff's office was instructed to serve the order affirming the ex parte protection order and the ex parte protection order. Dodge testified that he met Gomez at a local hospital and that he provided Gomez with the attachments to the cover sheet in exhibit 4, i.e., the order affirming the

ex parte protection order and the ex parte protection order. Dodge also testified that he signed the service return indicating he served the cover sheet and attachments on Gomez at a hospital on January 4, 2018. Viewing this evidence in the light most favorable to the prosecution, a rational trier of fact could find beyond a reasonable doubt that Gomez was served with the order affirming the ex parte protection order.

## CONCLUSION

Finding no merit in the sole assignment of error, we affirm.

AFFIRMED.

FREUDENBERG, J., not participating.