Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/04/2022 08:07 AM CST

STATE OF NEBRASKA, APPELLEE, V.
CHARLIE R. JOHNSON, APPELLANT.

___ N.W.2d ___

Filed December 10, 2021.   No. S-20-898.

1. **Criminal Law: Courts: Judgments: Appeal and Error.** In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeals, and its review is limited to an examination of the record for error or abuse of discretion. Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record. When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

2. **Statutes.** Statutory interpretation presents a question of law.

3. **Criminal Law: Statutes.** While a penal statute is to be construed strictly in favor of the defendant, it is to be given a sensible construction in the context of the object sought to be accomplished, the evils and mischiefs sought to be remedied, and the purpose sought to be served.

4. **Criminal Law: Statutes: Appeal and Error.** In strictly construing penal statutes, an appellate court does not supply missing words or sentences to make clear that which is indefinite, or to supply that which is not there.

5. **Marriage: Statutes: Legislature: Intent.** It is generally held that a marriage is not void unless the statutes expressly so declare, and that courts should not so construe it unless the legislative intent to such effect is clear and unequivocal.

6. **Marriage.** A marriage is voidable when it has legal imperfections in its establishment which can be inquired into only during the lives of both of the parties in a proceeding by annulment to obtain a judgment of a competent court declaring its invalidity.

7. **____.** The general rule is that the validity of a marriage is determined by the law of the place where it was contracted.

8. \_\_\_\_. A major difference between a void marriage and a voidable marriage is that the latter is treated as valid and binding until its nullity is ascertained and declared by a competent court, whereas the former does not require such a judgment.

9. \_\_\_\_. A voidable marriage is legally valid for all civil purposes until its nullity is so pronounced.

10. **Criminal Law: Marriage.** A bigamy prosecution can be based on a voidable marriage.

11. **Criminal Law: Trial: Evidence: Proof.** In the absence of a statute placing the burden of proving an affirmative defense on the defendant in a criminal case, the nature of an affirmative defense is such that the defendant has the initial burden of going forward with evidence of the defense, and once the defendant has produced sufficient evidence to raise the defense, the issue becomes one which the State must disprove.

12. **Criminal Law: Convictions: Evidence: Appeal and Error.** When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

13. **Trial: Stipulations.** Stipulated facts may still involve issues of fact and credibility, which are the province of the trial court to resolve.

Appeal from the District Court for Lancaster County, Patricia A. Lamberty, Judge, on appeal thereto from the County Court for Lancaster County, Matthew L. Acton, Judge. Judgment of District Court affirmed.

Matthew K. Kosmicki for appellant.

Douglas J. Peterson, Attorney General, and Matthew Lewis for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Cassel, J.

## INTRODUCTION

In this appeal from a district court judgment affirming a county court's conviction and sentence for bigamy, Charlie R. Johnson challenges the sufficiency of the evidence

establishing that he was a "married person."[1] He asserts that his prior marriage was legally invalid. For that marriage, a Nebraska marriage license was obtained, but the solemnization occurred in Texas. Because we conclude that a voidable marriage will support a bigamy prosecution, we affirm the district court's judgment.

## BACKGROUND

### County Court Trial Proceedings

The State charged Johnson with bigamy, contending that when he married Natalie Forney he was already married to Shelley Petersen. Defense counsel argued that Johnson's marriage to Petersen was not a valid marriage because it did not comply with statutes in Nebraska or Texas. The county court held a bench trial, at which the parties stipulated to the exhibits, including an exhibit setting forth what the witnesses would testify to, if called. Next, we summarize that evidence.

On June 29, 2015, Johnson and Petersen completed a marriage worksheet at the Lancaster County clerk's office in Nebraska and paid the requisite fee. Tory Carkoski, a front desk clerk at the Lancaster County clerk's office, watched Johnson and Petersen sign a Nebraska marriage license and notarized their signatures.

On July 4, 2015, Johnson's sister, an ordained minister, performed a wedding ceremony for Johnson and Petersen in Texas. Johnson's sister signed a "Keepsake Marriage Certificate," but she did not sign or return the Nebraska marriage license. Johnson's sister claimed that she later threw away the marriage license at Johnson's request. Johnson and Petersen returned to Nebraska and resided together. They had an "on again - off again relationship."

Carkoski recalled having repeated and frequent contact with the couple within a few weeks of producing the June 29, 2015, marriage license for them. During that time, Petersen

---

[1] See Neb. Rev. Stat. § 28-701(1) (Reissue 2016).

called at least 10 times to inquire whether the marriage license had been returned. Petersen informed Carkoski that although she was able to change her surname with the Social Security Administration using the keepsake marriage certificate, she wanted a certified copy of the license in order to "change her information" with the Nebraska Department of Motor Vehicles. During this timeframe, Johnson told Carkoski that he did not want to be married and inquired how to "prevent the marriage from going through." Carkoski responded that "if they had already filled out the documentation and had the ceremony, they were married."

In late 2016 or early 2017, Carkoski notified the records administrator of the Lancaster County clerk's office that the marriage license between Johnson and Petersen had not been filed. When the records administrator determined that no marriage license was filed for the 2015 marriage, she called Johnson's sister and informed her that a replacement marriage license would be sent which needed to be signed and returned. Johnson and Petersen returned to the Lancaster County clerk's office, signed a copy of the replacement marriage license, and had Carkoski notarize their signatures. Subsequently, the marriage license was returned and filed with the Lancaster County clerk's office in January 2017. The license contained signatures of Johnson's sister and two witnesses. It stated that Johnson and Petersen were married on July 4, 2015, in Lancaster County, Nebraska.

At some point, possibly as late as May 2018, Johnson moved out of the residence he shared with Petersen. Screenshots of text messages between them, some of which were sent in September, showed that Johnson referred to himself as Petersen's husband and to her as his wife.

On November 5, 2018, Carkoski received a marriage worksheet for Johnson and Forney. On November 16, a signed marriage license was filed with the Lancaster County clerk's office showing that Johnson married Forney in Lancaster County on November 15.

In 2019, Petersen attempted to file her income taxes as married filing jointly with Johnson. The Internal Revenue Service notified her that she could not do so because Johnson had filed income taxes as married filing jointly with Forney. Petersen notified the police department, and an investigation uncovered two marriage certificates on file at the Lancaster County clerk's office but no intervening divorce. When a police officer spoke with Johnson, he said that he and Petersen were going to get married but never did.

At the trial's conclusion, the county court took the matter under advisement to allow the parties to file briefs, which are not in our record. The court later convicted Johnson and subsequently imposed a sentence of 30 days in jail.

## Appeal to District Court

Johnson appealed to the district court, challenging the sufficiency of the evidence. Citing Neb. Rev. Stat. § 42-104 (Reissue 2016), the district court stated that there were only two requirements for a valid marriage under Nebraska law: a marriage license and solemnization of the marriage by a person authorized by law to solemnize marriages. The court stated that "[t]he evidence unequivocally validates [Johnson's] marriage to [Petersen]" and affirmed Johnson's conviction.

Johnson then appealed to the Nebraska Court of Appeals. We later granted the State's petition to bypass review by the Court of Appeals.[2]

## ASSIGNMENT OF ERROR

Johnson assigns that the district court erred in affirming the county court's finding that the State proved him guilty of bigamy beyond a reasonable doubt.

## STANDARD OF REVIEW

[1] In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeals, and

---

[2] See Neb. Rev. Stat. § 24-1106(2) (Cum. Supp. 2020).

its review is limited to an examination of the record for error or abuse of discretion.[3] Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record.[4] When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[5]

[2] Statutory interpretation presents a question of law.[6]

## ANALYSIS

### Statute and Principles of Statutory Construction

We begin by quoting the statute defining the crime of bigamy and recalling principles of statutory construction regarding penal statutes. Bigamy is defined in § 28-701(1), which provides:

> If any married person, having a husband or wife living, shall marry any other person, he shall be deemed guilty of bigamy, unless as an affirmative defense it appears that at the time of the subsequent marriage:
>
> (a) The accused reasonably believes that the prior spouse is dead; or
>
> (b) The prior spouse had been continually absent for a period of five years during which the accused did not know the prior spouse to be alive; or
>
> (c) The accused reasonably believed that he was legally eligible to remarry.

[3] While a penal statute is to be construed strictly in favor of the defendant, it is to be given a sensible construction in

---

[3] *State v. Ferrin*, 305 Neb. 762, 942 N.W.2d 404 (2020).

[4] *Id.*

[5] *Id.*

[6] *Id.*

the context of the object sought to be accomplished, the evils and mischiefs sought to be remedied, and the purpose sought to be served.[7] Bigamy "destroys the happiness of families and social order; it places the stigma of illegitimacy upon innocent children; it complicates and prevents the regular descent of property, and deprives the unoffending of their rightful inheritance."[8] We have recognized that the marital relationship "is a status, and that the state is interested in and is, in effect, a party to it."[9] Long ago, we explained, "The creation of the status entails certain duties and obligations upon the parties thereto . . . ."[10] Those, we said, included duties and obligations of support.[11] An observation by a different court that "[t]he benefits accessible only by way of a marriage license are enormous, touching nearly every aspect of life and death"[12] was not mere hyperbole. Thus, we have reiterated that permitting bigamy would "disturb the peace of families and offend against the decency and good order of society."[13]

[4] Importantly, § 28-701 does not speak to the validity of the marriage. The Legislature used no qualifier for the term "married person." Johnson's entire argument, as he conceded at oral argument, depends upon reading the first phrase of § 28-701(1) as "any *validly* married person." But in strictly construing penal statutes, an appellate court does not supply missing words or sentences to make clear that which is indefinite, or to supply that which is not there.[14]

---

[7] See *State v. Thelen*, 305 Neb. 334, 940 N.W.2d 259 (2020).

[8] *Baker v. State*, 86 Neb. 775, 783, 126 N.W. 300, 303 (1910).

[9] *Collins v. Hoag & Rollins*, 122 Neb. 805, 807, 241 N.W. 766, 767 (1932).

[10] *Id.*

[11] See *id.*

[12] *Goodridge v. Department of Public Health*, 440 Mass. 309, 323, 798 N.E.2d 941, 955 (2003).

[13] *Rich v. Fulton*, 104 Neb. 262, 264, 177 N.W. 175, 175 (1920).

[14] See *State v. Gomez*, 305 Neb. 222, 939 N.W.2d 763 (2020).

Rather than conferring the term "marriage" only on a valid marriage,[15] the Legislature also used that term for marriages that it described as void[16] or voidable.[17] We discuss the legal status of the various types of marriages next.

## STATUS OF MARRIAGES

Marriage as a social institution is favored by public policy, and the law raises a strong presumption in favor of its legality.[18] With respect to § 42-104, which sets forth what is needed for a marriage to be recognized as valid in Nebraska, we stated:

> The [statute] has particularly to do with the manner and method of the valid creation of the marriage relation, but, in the absence of express statutory invalidation, this court has held that the fact that the license required was wrongfully or fraudulently procured may subject the parties to the pains and penalties of the law for violation thereof, but it does not alone affect the validity of the marriage itself.[19]

Further, "[a]ll marriages contracted without this state, which would be valid by the laws of the country in which the same were contracted, shall be valid in all courts and places in this state."[20] Here, the marriage ceremony occurred in Texas. Although one Texas statute requires a Texas marriage license,[21] another provides that the validity of a marriage is generally

---

[15] See § 42-104 and Neb. Rev. Stat. § 42-117 (Reissue 2016).

[16] See Neb. Rev. Stat. § 42-103 (Reissue 2016).

[17] See Neb. Rev. Stat. § 42-118 (Reissue 2016).

[18] See *Christensen v. Christensen*, 144 Neb. 763, 14 N.W.2d 613 (1944). See, also, Tex. Fam. Code Ann. § 1.101 (2006).

[19] *Christensen v. Christensen, supra* note 18, 144 Neb. at 768, 14 N.W.2d at 616.

[20] § 42-117.

[21] See Tex. Fam. Code Ann. § 2.001(a) (2006).

not affected by any fraud, mistake, or illegality that occurred in obtaining the marriage license.[22] And Texas has declared that its policy is "to preserve and uphold each marriage against claims of invalidity unless a strong reason exists for holding the marriage void or voidable."[23]

[5] "An invalid marriage has traditionally been considered either void or voidable, depending in part on the particular ground for the challenge to validity, and on the varying language of particular statutory enactments."[24] A marriage that is void is not valid for any legal purpose.[25] "It is generally held that a marriage is not void unless the statutes expressly so declare, and that courts should not so construe it unless the legislative intent to such effect is clear and unequivocal."[26] Johnson's marriage to Petersen does not fall within those classes declared to be void.[27] At oral argument, Johnson conceded that his marriage to Petersen was not void.

[6] A marriage can also be voidable. A marriage is voidable when it has legal imperfections in its establishment which can be inquired into only during the lives of both of the parties in a proceeding by annulment to obtain a judgment of a competent court declaring its invalidity.[28]

Johnson's argument attacking the validity of his marriage to Petersen relies on language from § 42-104. One sentence

---

[22] See Tex. Fam. Code Ann. § 2.301 (2006).

[23] Tex. Fam. Code Ann. § 1.101.

[24] 177 Am. Jur. Proof of Facts 3d 111 *Validity of Marriage* § 2 at 126 (2019).

[25] See *Christensen v. Christensen, supra* note 18.

[26] *Id.* at 767, 14 N.W.2d at 615.

[27] See, § 42-103 (declaring void marriages where, at time of marriage, either party has a living husband or wife, either party is mentally incompetent to enter into marriage relation, or parties are sufficiently related); *Collins v. Hoag & Rollins, supra* note 9 (common-law marriages are void). See, also, Tex. Fam. Code Ann. § 6.201 et seq. (2006 & Cum. Supp. 2018).

[28] See *Christensen v. Christensen, supra* note 18.

of § 42-104 states, "No marriage hereafter contracted shall be recognized as valid unless such license has been previously obtained and used within one year from the date of issuance and unless such marriage is solemnized by a person authorized by law to solemnize marriages." Johnson does not contend that no license was obtained. For apparently the first time on appeal to this court, he questioned whether his sister was "a person authorized by law to solemnize marriages." The parties stipulated that she was an ordained minister; there was no evidence casting doubt on her authority to solemnize a marriage. This court has previously stated that Neb. Rev. Stat. § 42-114 (Reissue 2016) authorizes anyone to perform a valid marriage ceremony if he or she purports to be a minister of the gospel and if the marriage is consummated with a full belief on the part of either of the parties married that they have been lawfully joined in marriage.[29] Here, the evidence shows that Petersen believed she was lawfully married to Johnson.

Johnson's argument primarily rests upon another sentence of § 42-104 which states, "Prior to the *solemnization of any marriage in this state*, a license for that purpose shall be obtained from a county clerk in the State of Nebraska." (Emphasis supplied.) Reading this language together, he urges that for a marriage based upon a Nebraska license to be valid, it must be solemnized in Nebraska—in other words, the solemnization in Texas rendered his marriage invalid in Nebraska. We are not persuaded. We do not read § 42-104 to govern the validity of a marriage solemnized in another state.

[7] The general rule is that the validity of a marriage is determined by the law of the place where it was contracted, i.e., where the ceremony was performed.[30] Here, the ceremony occurred in Texas and Johnson has not shown that Texas

---

[29] See *Collins v. Hoag & Rollins, supra* note 9.

[30] See, *Randall v. Randall*, 216 Neb. 541, 345 N.W.2d 319 (1984); 11 Am. Jur. 2d *Bigamy* § 4 (2019).

law would not recognize a marriage performed in that state based upon a license issued by a sister state. A Texas statute states that "every marriage entered into in this state is presumed to be valid unless expressly made void by Chapter 6 [of the Texas Family Code] or unless expressly made voidable by Chapter 6 and annulled as provided by that chapter."[31] Johnson has cited no Texas statute arguably declaring such a marriage to be void or voidable, and we have not found any provision of chapter 6 which would do so. To the contrary, Texas case law persuades us that a Texas court would treat Johnson's marriage to Petersen as valid.[32] If Texas law applies and that state would recognize the marriage as valid, § 42-117 would require that we do so also.

Even if Texas law is disregarded, we are not persuaded that Nebraska law would treat Johnson's marriage to Petersen as void. If not valid under Nebraska law, it would be voidable only. And there is no evidence of any Nebraska proceeding to annul the marriage.

### PROSECUTION BASED ON VOIDABLE MARRIAGE

The question becomes whether a bigamy prosecution may be based on a voidable marriage. We have not directly addressed that question in our decisions involving bigamy convictions.[33]

---

[31] Tex. Fam. Code Ann. § 1.101.

[32] See, e.g., *In re Estate of Loveless*, 64 S.W.3d 564 (Tex. App. 2001) (even if parties failed to comply with formalities involved in obtaining marriage license, failure to comply with formalities does not render marriage invalid unless statute declares it so); *Husband v. Pierce*, 800 S.W.2d 661 (Tex. App. 1990) (unlicensed Mexican ceremonial marriage and informal common-law marriage were voidable only).

[33] See, *Barnts v. State*, 116 Neb. 363, 217 N.W. 591 (1928); *Staley v. State*, 89 Neb. 701, 131 N.W. 1028 (1911) (*Staley II*); *Staley v. State*, 87 Neb. 539, 127 N.W. 878 (1910); *Baker v. State, supra* note 8; *Hills v. State*, 61 Neb. 589, 85 N.W. 836 (1901); *Reynolds v. State*, 58 Neb. 49, 78 N.W. 483 (1899).

Instead, our prior decisions in bigamy prosecutions have touched on an assertion that a marriage was void because both contracting parties were already married,[34] the sufficiency of the information alleging the prior marriage,[35] a challenge to a jury instruction,[36] and the validity of an Iowa marriage that would have been void in Nebraska.[37] And in considering our older decisions, it is important to recognize that prior to 1923, Nebraska recognized common-law marriage.[38] We said that § 42-104, upon which Johnson now relies, is "purely a regulatory statute, intended to regulate the manner in which the marriage relation may be created."[39]

[8,9] Other courts have answered the question.[40] It is clear that a void marriage will not support a bigamy prosecution.[41] But we are mindful that "'[a] major difference between a void marriage and a voidable marriage is that the latter is *treated as valid and binding* until its nullity is ascertained and declared by a competent court, whereas the former does not require such a judgment.'"[42] And while we have explicitly stated that "a voidable marriage is legally valid for all *civil purposes* until its nullity is so pronounced,"[43] other courts—including Texas[44]— are of the view that a voidable marriage is good for *every*

---

[34] See *Reynolds v. State, supra* note 33.

[35] See, *Baker v. State, supra* note 8; *Hills v. State, supra* note 33.

[36] *Hills v. State, supra* note 33.

[37] *Staley II, supra* note 33.

[38] See *Collins v. Hoag & Rollins, supra* note 9.

[39] *Id*. at 810, 241 N.W. at 768.

[40] See 11 Am. Jur. 2d, *supra* note 30.

[41] See *id.*

[42] *Watts v. Watts*, 250 Neb. 38, 43, 547 N.W.2d 466, 470 (1996) (emphasis supplied).

[43] *Christensen v. Christensen, supra* note 18, 144 Neb. at 766, 14 N.W.2d at 615 (emphasis supplied).

[44] *Simpson v. Neely*, 221 S.W.2d 303 (Tex. App. 1949).

purpose.[45] With that view in mind, it is unsurprising that a number of states have found a voidable marriage to be sufficient for a bigamy prosecution.[46]

[10] We hold that a bigamy prosecution can be based on a voidable marriage. Such a marriage is treated as valid. As another court cautioned with respect to bigamy, "if such a marriage be legal for other purposes, it would be dangerous in the extreme, to allow the mere form of the marriage to become a shield to protect those who commit such a crime."[47] With this established, we turn to whether the State proved beyond a reasonable doubt that Johnson was guilty of bigamy.

## PROOF OF BIGAMY

Based on the text of § 28-701(1), there are two essential elements of bigamy. Under the circumstances here, the State had to prove beyond a reasonable doubt (1) that Johnson was a "married person" with a wife living and (2) that he married another person.

The State proved the essential elements of bigamy. It adduced two documents titled "License and Certificate of Marriage" from the Nebraska Department of Health and Human Services' vital records office, each showing that the

---

[45] See 177 Am. Jur. Proof of Facts 3d, *supra* note 24. See, also, *Smith v. Smith*, 224 So. 3d 740 (Fla. 2017); *Trapasso v. Lewis*, 247 Md. App. 577, 239 A.3d 703 (2020); *In re De Conza's Estate*, 13 N.J. Misc. 41, 176 A. 192 (1934); *Dibble v. Meyer*, 203 Or. 541, 278 P.2d 901 (1955); *Brewer v. Miller*, 673 S.W.2d 530 (Tenn. App. 1984); *Toler v. Oakwood Smokeless Coal Corporation*, 173 Va. 425, 4 S.E.2d 364 (1939); *In re Hollingsworth's Estate*, 145 Wash. 509, 261 P. 403 (1927).

[46] See, e.g., *Beggs v. State*, 55 Ala. 108 (1876); *Barber v. People*, 203 Ill. 543, 68 N.E. 93 (1903); *State v. Yoder*, 113 Minn. 503, 130 N.W. 10 (1911); *State v. Eden*, 350 Mo. 932, 169 S.W.2d 342 (1943); *Ysern v. Horter*, 94 N.J. Eq. 135, 118 A. 774 (1922); *People v. Dunbar*, 194 A.D. 144, 184 N.Y.S. 765 (1920); *State v. Moore*, 1 Ohio Dec. Reprint 171 (1845); *State v. Sellers*, 140 S.C. 66, 134 S.E. 873 (1926).

[47] *Carmichael v. State*, 12 Ohio St. 553, 561 (1861).

ceremony occurred in Lancaster County: one was filed in January 2017 in the names of Johnson and Petersen and showed a July 2015 ceremony date and the other was filed in November 2018 in the names of Johnson and Forney. These records are presumptive evidence of the fact of such marriages.[48] The State produced evidence that there was no record Johnson divorced Petersen prior to his marriage to Forney.

[11] Section 28-701(1) identifies several affirmative defenses, but the statute is silent as to who carries the burden of proving them. In the absence of a statute placing the burden of proving an affirmative defense on the defendant in a criminal case, the nature of an affirmative defense is such that the defendant has the initial burden of going forward with evidence of the defense, and once the defendant has produced sufficient evidence to raise the defense, the issue becomes one which the State must disprove.[49] The evidence necessary to raise an affirmative defense may be adduced either by the defendant's witnesses or in the State's case in chief without the necessity of the defendant's presenting evidence.[50] A defendant need only adduce a slight amount of evidence to satisfy this initial burden of raising an affirmative defense.[51]

Johnson adduced sufficient evidence to raise the affirmative defense that he "reasonably believed that he was legally eligible to remarry."[52] The evidence showed that Johnson and Petersen obtained a Nebraska marriage license, but that the ceremony occurred in Texas. Johnson argued to the county court that the marriage was not a valid marriage because it did not comply with statutes in Nebraska or Texas. If the marriage was void, Johnson would be eligible to remarry.

---

[48] See Neb. Rev. Stat. § 42-116 (Reissue 2016).

[49] *State v. Grutell*, 305 Neb. 843, 943 N.W.2d 258 (2020).

[50] *Id.*

[51] *Id.*

[52] See § 28-701(1)(c).

[12,13] When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[53] Here, the parties stipulated to the evidence, including an exhibit setting forth what witnesses would say if called to testify. Stipulated facts may still involve issues of fact and credibility, which are the province of the trial court to resolve.[54]

The evidence supports a finding that Johnson believed he was married to Petersen, making him ineligible to legally remarry. Viewing the evidence in the light most favorable to the State, it shows that Johnson and Petersen acquired a marriage license and participated in a wedding ceremony performed by Johnson's sister, an ordained minister. After those events, when Johnson inquired as to how to "prevent the marriage from going through," he was told by an employee at the Lancaster County clerk's office that he was married if he already filled out the marriage license and had the ceremony. The evidence showed that after having been informed of the effect of obtaining a license and participating in a marriage ceremony, Johnson referred to Petersen as his wife. When, over 1 year after the ceremony, it was discovered that the marriage license had not been filed, Johnson returned to the Lancaster County clerk's office and signed a replacement license, which was also signed by Johnson's sister and two witnesses. The evidence supports Johnson's conviction for bigamy.

## CONCLUSION

We conclude that Johnson's marriage to Petersen, even if not valid under statute, was at least a voidable marriage.

---

[53] *State v. Howard*, 282 Neb. 352, 803 N.W.2d 450 (2011).

[54] See *State v. Saylor*, 294 Neb. 492, 883 N.W.2d 334 (2016).

Because a voidable marriage is treated as valid until declared otherwise by a court of competent jurisdiction, it will support a bigamy prosecution. We conclude Johnson's conviction for bigamy conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. Accordingly, we affirm the judgment of the district court, which upheld the county court's judgment.

AFFIRMED.